## ASSOCIATED INDEMNITY CORPORATION v. WILSON et al.

### No. 12463.

Court of Civil Appeals of Texas. Fort Worth.

May 16, 1931.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellants.

Williams V. Brown, of Texarkana, and Pierre M. Stine, of Henrietta, for appellee.

CONNER, C. J.

This suit was instituted in the district court of Clay county by appellant Associated Indemnity Corporation to set aside an award in favor of Alberta Wilson, a feme sole, and John Wilson, Jr., by next friend, made by the Industrial Accident Board on or about the 21st day of February, 1930, in a sum in excess of $1,000.

The defendants filed a cross-plea claiming that Alberta Wilson was the wife of John Wilson, deceased, and that John Wilson, Jr., was the son of Alberta and John Wilson. That John Wilson was working for the Wichita Falls Cotton Oil Company, in Clay county, about the 28th day of August, 1929, and, while in the course of his employment, he received injuries from which he died on that day. It was further alleged that the appellant corporation was, under the Workmen's Compensation Law of Texas (Vernon's Ann. Civ. St. arts. 8306–8309), the insurer of the employees of the Wichita Falls Cotton Oil Company; that at the time he was receiving a salary of $2.25 a day, for six days a week, but that he had been employed for only thirty or sixty days prior to his injury, and that the regular and customary daily wage for employees doing work of that kind and character was $2.25.

It was further alleged that, owing to the destitute circumstances of appellees, it would work a manifest hardship upon them not to be paid the amount of compensation to which they were entitled in a lump sum rather than to be paid in weekly payments. They therefore prayed for a judgment of 60 per cent. of the average weekly wage of $8.10 for 360 weeks, and for said sum to be paid in one payment, with a reasonable reduction for payment thereof.

To the cross-action on the part of defendants, the corporation filed a general denial, and further pleaded that the death of John Wilson was not the result of any accident that he received in the course of his employment, but, on the contrary, his death was caused by other things and acts and conduct rather than any injury defendants alleged he had received.

Upon the conclusion of the evidence, the corporation requested a special instruction to an impaneled jury to find in its favor. The instruction was refused and the cause was submitted to the jury upon special issues, which, together with the answers thereto, are as follows:

"1. Do you find from a preponderance of the evidence that John Wilson received an injury in the course of his employment while working for Wichita Falls Cotton Oil Company on or about August 28, 1929? Answer: Yes.

"2. Do you find from a preponderance of the evidence that said injury, if you have found that he received such an injury, caused the death of John Wilson? Answer: Yes.

"3. What do you find from a preponderance of the evidence was the average weekly wage of an employee engaged in the same, or similar employment as John Wilson was engaged in, in Thornberry or neighboring places, for one year preceding August 28, 1929? Answer: Ten dollars.

"4. Do you find from a preponderance of the evidence that manifest hardship and injustice would result to Alberta Wilson and John Wilson, Jr., if compensation, if any, is not reduced and paid in a lump sum? Answer: Yes."

Upon the verdict so returned, the court rendered judgment in favor of appellees in the sum of $7 a week for a period of 360 weeks, which, as computed by the court, "after allowing discount for present payment at 6% per annum," was $2,113.02. From this judgment, the corporation has duly appealed to this court.

The first assignment of error goes to the action of the court in refusing a requested peremptory instruction, it being insisted that there was no evidence of probative force showing, or tending to show, that the injury alleged to have been received by John Wilson, deceased, was so received during the course of his employment with the Wichita Falls Cotton Oil Corporation.

We have concluded that the judgment must be reversed, and the cause remanded upon other grounds, and, therefore, we will not critically examine and discuss the evidence and determine the proposition presented under the first assignment.

For the purpose, however, of a clearer understanding of the record, we will very briefly outline the evidence relied upon as establishing the contention of appellees that John Wilson, deceased, received the injury during the course of his employment. It appears that the deceased had been employed by the Wichita Falls Cotton Oil Corporation, which was a subscriber under the Workmen's Compensation Law in the appellant Indemnity Corporation for about fifteen days at a daily wage of $2.25; that on or about the 28th day of August, 1929, he, together with an-

other, lifted and removed to another place a bale of cotton; that he continued working for some two hours thereafter when he began to complain of a cramp in his stomach which grew worse, and he was taken home. His family physician was called to attend him, and said physician testified to the effect that he found a hernia and the patient in great pain; that soon thereafter John Wilson expired.

Prior to this, the evidence tended to show that John Wilson, deceased, was a strong man, without disease or sickness of any kind, and the contention of appellees was that in lifting the cotton the deceased had so strained himself as to produce hernia and death.

 We think it clear, however, that the court erred, as assigned, in refusing to give the following special instructions requested by the appellant, to wit:

"Gentlemen of the Jury:

"1. Do you find from a preponderance of the evidence that the death of John Wilson was solely caused by the administration of chloroform by Dr. Holton? Answer as you find the facts to be.

"2. Do you find from a preponderance of the evidence that the death of John Wilson was solely caused by poison? Answer as you find the facts to be."

We note the following evidence as calling for these charges, to wit:

Dr. J. B. Holton was the family doctor of the deceased, John Wilson; that he was specially called and placed upon the witness stand by the appellees; that Dr. Holton testified that when he arrived he found that John Wilson had a scrotal hernia on the left side but that he was cramping all over and vomiting incessantly, and that a hernia would not cause him to cramp that way, as he had never seen any one cramp that badly; that he gave him a hypo, but that did not relieve him; that he then gave him chloroform. He further testified:

"I don't think this hernia was the cause of this suffering. I have treated quite a number of hernia, but I never saw anybody suffer like he was suffering from a hernia. I couldn't say if it is a fact that this man died from appendicitis or acute poisoning of the stomach, but negroes have trouble with their appendix like white folks do. He evidently was poisoned, that was my guess. He was vomiting incessantly and the most offensive I ever saw. Someone around the house said he ate an awful dinner. As to whether I saw watermelon; yes, sir, my opinion is he died from acute poisoning.

"I think he was poisoned; I think it was a toxic poison of some kind. I don't think the death was caused from any hernia or strain. I don't think that would have killed

him at all. There was an autoinfection in this stomach, evidently.

"Sometimes when a patient is suffering from pain all doctors do not have time to test the strength of his heart. Sometimes people can't take chloroform. Sometimes when people eat heavy dinners and suffer from gas on the stomach, chloroform will help to relax the muscles and cause death. That happens even with the best of doctors when they do their best, I don't think that man's death was caused from any injury."

Dr. M. M. Walker, who performed the post mortem examination of the deceased, testified that the deceased had a badly dilated stomach, about three times the size of an ordinary stomach, and that the appendix was full of small rocks; that they were not caused by trauma or lick, and in his opinion the negro died from chloroform. He further testified: "I got part of the history from the undertaker and part of it from the doctor (Dr. Horton) at Charlie, and part of it from the men working there. The doctor at Charlie told me that he died from an overdose of chloroform, he thought he died from an overdose of chloroform. Anyone that gives anesthetics is going to have someone die some time. I am not impugning the doctor in the least; I think I have had that happen to me."

Dr. B. C. Cammack, who assisted in performing the post mortem examination of John Wilson, deceased, testified:

"We did a complete post mortem. We opened his skull, examined his chest and abdomen, took all of his organs out and examined them. I did not find any evidence of traumatism on that negro at all. I did not find any evidence of strangulated hernia or any rupture of any kind. If there had been any evidence of trauma or rupture or hernia I would have found it.

"We opened the abdomen and his stomach was two or three times normal size.

"Chloroform will cause a stomach to dilate and it being a protoplasmic poison it would affect the heart too.

"We went into this man's intestines and stomach and saw what it contained. The stomach contained what looked just like a greenish lot of stomach contents and it was hard to tell—undigested food. You couldn't tell for sure what the food was. At that time you couldn't tell whether he had been eating meat or bread or vegetables; it was all mixed up. I couldn't swear whether he had been eating peaches or apples or anything of that kind."

 The burden of proof was upon appellees to show that John Wilson, during the course of his employment, received an injury which was a proximate cause of his death, and the rule that a defendant to an action of the kind has the right to an affirmative presenta-

146

tion of any lawful defense to an action against him, of which there is competent evidence tending to support, is too well established to require discussion. In support of this rule, we think it only necessary to cite a few of the cases, to wit, M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, and cases there cited.

For the error of the court in refusing the special charges mentioned, we think the judgment must be reversed, and the cause remanded for a new trial.

We also suggest that upon another trial, if before a jury, the court in his instructions should define the legal terms "injury" and "course of employment," as was specially requested by the appellant. See part 4, Workmen's Compensation Law, art. 8309, § 1, subdivision 5; Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; Texas Employers' Ins. Ass'n v. Owen (Tex. Com. App.) 298 S. W. 542; Zurich General Accident & Liability Ins. Co., Ltd., v. Wood (Tex. Civ. App.) 27 S.W.(2d) 838; Barron v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 36 S.W. (2d) 464, 465.

We also note that the court, in fixing the lump sum adjudged in favor of the appellees, discounted the aggregate amount of wages at the rate of $7 per week for a period of 360 weeks, by allowing for present payment 6 per cent. per annum. Section B of the Commission of Appeals, in an opinion by Judge Leddy, approved by the Supreme Court, recently decided that the present value of lump sum compensation should be determined by evidence, and not discounted at the legal interest. See U. S. Fidelity & Guaranty Co. v. Nettles (Tex. Com. App.) 35 S.W.(2d) 1045.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.