SOUTHERN UNDERWRITERS v. WHEELER.

No. 13574.

Court of Civil Appeals of Texas. Fort Worth.

July 9, 1937.

Rehearing Denied Sept. 17, 1937.

T. R. Boone, Kearby Peery, and Otis E. Nelson, all of Wichita Falls, for appellant.

J. B. Cotten, of Crane, and J. Earle Kuntz and McDonald & Anderson, all of Wichita Falls, for appellee.

SPEER, Justice.

This appeal involves the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.). C. F. Wheeler sued the Southern Underwriters in the district court of Archer county, Tex., to set aside an award of the Industrial Accident Board and for compensation under the law as an employee of Lee L. Wheeler.

In view of the necessity for us to refer to the parties, and to the employer who has the same name as the injured party, we shall hereinafter mention C. F. Wheeler as plaintiff and the Southern Underwriters as defendant.

Plaintiff claims to have received serious injuries to his person on September 1, 1934, while in the employ of his son, Lee L. Wheeler; that when injured he was engaged in drilling a water well with suitable machinery for that purpose; that while in the discharge of his duties he was spooling a wire line with a piece of pipe; the pipe caught in the clutch of the machine and flew out and struck plaintiff in the face, inflicting serious permanent injuries, rendering him totally disabled to perform labor of a useful nature. He alleged he had been employed by Lee L. Wheeler and had worked more than 300 days during the year immediately preceding the date of the injury and that his average wage had been $8 per day.

He pleaded, alternatively, that if he be mistaken in his allegations that he had worked as much as 300 days during the year preceding the date of the injury, or that the same average wage had been paid to other employees of the same class working substantially the whole of the year preceding the date of his injury, then, and in that event, there were no other employees of the same or similar class in that or neighboring vicinities working substantially the whole of the year immediately preceding September 1, 1934, and the court was asked to fix plaintiff's average weekly wage and compensation rate as may seem just and fair to all parties concerned.

Defendant answered by a general denial, and specially (a) that, if plaintiff ever received injuries such as complained of, they were not the sole cause of such afflictions and diseases as those with which plaintiff was suffering, if he was suffering from any afflictions or diseases; (b) that plaintiff was not working for any one entitled to workmen's compensation insurance at the time he claims to have been injured; and (c) that defendant had on about April 16, 1934, issued to Lee L. Wheeler a policy of workmen's compensation insurance but that thereafter and prior to the date plaintiff claims to have been injured, said policy of insurance had been canceled and was not then in effect.

A jury trial was had and a verdict rendered on special issues submitted by the court; answers to the issues were favorable to plaintiff, and a judgment was entered thereon from which defendant has perfected and is prosecuting this appeal.

Defendant's first and second assignments of error are properly discussed together in its brief; these assignments raise the issue that, since the policy of insurance held by the employer covered only "oil or gas producing, operating of leases, including incidental cementing and cleaning out wells, drilling operations, but no other drilling operations," an employee receiving injuries while drilling a water well was not protected thereunder. And, further, where a policy specifically excludes, by rider attached thereto, prior to the date of the alleged injury, all drilling work other than oil or gas wells, an employee injured while drilling a water well subsequent to the date the rider was attached to the policy was not protected and could not recover compensation.

In discussing these assignments, it becomes necessary to consider the facts as

disclosed by the testimony on these points. It is undisputed that prior to April 16, 1934, the employer applied for a compensation insurance policy sufficient to cover his operations, which included the drilling of water wells along with his work in cleaning, swabbing, and operating oil wells, trucking, hauling, and so forth; that when a policy was presented to him by the agent of defendant, which did not cover his water well operations, he rejected it for that reason; that the policy was revised and returned to him on April 16, 1934, with a letter from defendant accompanying it stating it covered his water well drilling, and expressing hopes that he found it satisfactory. Employer accepted the policy which, under the pay roll representations made by him, required the deposit of an annual premium of $81. Employer paid to the delivering agent $10 at the time. The testimony is somewhat conflicting as to when he paid the remainder of the premium. Parts were paid in cash and parts by checks; the latter were not paid on presentation because of insufficient funds in the banks to the credit of the employer at the time they were presented. It is reasonably certain, however, from the record that the whole of the premium was not paid prior to June 21, 1934. Plaintiff offered in evidence as one of his exhibits an instrument captioned, "The Southern Underwriters, Endorsement," dated and signed by defendant as of June 21, 1934, by which indorsement it is claimed by defendant the coverage in the original policy for compensation to an employee, while drilling water wells, was by it canceled. It is by virtue of this instrument that defendant urges the assignments of error above mentioned.

The instrument sent to the employer by defendant as a rider or indorsement for the original policy reads as follows:

"The Southern Underwriters
"Endorsement

"Attached to and forming part of Policy No. WC-452 issued by Subscribers at The Southern Underwriters, Houston, Tex., to Lee L. Wheeler, Kilgore, Texas.

"It is understood and agreed that Classification No. 6204 Drilling Work (NOC) (NPD) including Drivers, Chauffeurs and their Helpers, is hereby eliminated from the policy to which this endorsement is attached, and,

"Classification No. 6202 Oil or Gas Wells—Development—including erection and dismantling of derricks, drilling of new wells, and drilling of old wells deeper, the installation of casing and of pumping machinery, cementing, and Drivers, Chauffeurs and their Helpers—excluding the Shooting of wells. $1000.00 Estimated Total Annual Remuneration. Rate $12.85.

"Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or declarations of the above mentioned policy other than above stated.

"This endorsement shall take effect April 16th 1934, 12:01 o'clock A. M., standard time, and shall terminate simultaneously with said policy.

"Date at Houston, Texas, this 21st day of June, 1934.
"Southern Underwriters Corporation,
"Attorney-in-Fact,
"Geo. R. Christie, President."

The witness Ward testified he was agent for the Texas Employers' Insurance Association and was acquainted with rates and classifications on workmen's compensation insurance; that the Insurance Commission fixes the classifications for the different kind of employers; the witness had a book which fixed the classifications; he said No. 6204 covered drilling operations other than those covered by No. 6202; that the latter number covered oil and gas wells; that there was a different rate for the two classifications.

Whether the employer knew it or not, the language used in the proposed indorsement undertook to eliminate liability for drilling classed as No. 6204. It is not clear from Ward's testimony whether these numbers, by which he knew the different classifications, were used by the Insurance Commission for that purpose or whether they were arbitrary numbers used by the association represented by him; be that as it may, we do not believe the mailing by the defendant of the indorsement to the employer was effective as a cancellation of that part of the contract.

The record discloses that the employer only had three employees, one or more of whom worked with the water machines, although those machines did not operate at all times; when not thus employed they worked at intervals on the machines used in connection with the oil and gas business; it is certain the employer did not want a policy which did not include his water well operations, since he declined the first policy written in which it was omitted. We have carefully studied the policy issued by de-

fendant and we find no provisions in the contract which would authorize the defendant to eliminate a part of the coverage by indorsements or otherwise without the consent of the employer. There is a provision for either the carrier or the employer to cancel the whole contract by giving the notice of such intention required by the terms of the policy; but we do not believe either party would have the right to otherwise alter the contract without the consent of the other. The employer paid the remainder of the annual premium after June 21, 1934, the date on which defendant claims to have canceled the part of the policy which covered employees while operating the water well machines; the acceptance of the premium by defendant would indicate that it knew the employer had not consented to the cancellation of that part of the policy. Under these circumstances, the court submitted a special issue to the jury in this language: "Do you find from a preponderance of the evidence that Lee Wheeler agreed to the amendment of the policy in question as set out in the instrument dated June 21, 1934, and being plaintiff's Exhibit No. 8 in this case?" The jury answered, "No." There was no error in the court refusing a peremptory instruction for the defendant under this phase of the record. The assignments above mentioned are overruled.

Defendant's third assignment of error challenges the action of the court in rendering judgment for plaintiff because of a variance between the allegations and proof as to the name of the employer. The policy was issued to Lee L. Wheeler, post office address, P. O. Box 1092, Kilgore, Tex. The record shows conclusively that the employer's name was really Virgil Lee Wheeler. We think the record also shows beyond any shadow of a doubt that the person named in the policy as Lee L. Wheeler is the same person whose name is Virgil Lee Wheeler, and further that defendant was in no way deceived or misled by the variance in the names given. The employer testified that his name was V. L. Wheeler; that his first name was Virgil and the second was Lee; that he was sometimes called Virgil and sometimes called Lee Wheeler; that he lived at Kilgore, Tex., and his post office box was 1092; that the several checks given by him to defendant were signed V. L. Wheeler; that he had received many letters from the defendant concerning failure to pay his premiums, all addressed to Kilgore, Tex., at P. O. Box

1092. The plaintiff testified that the employer was his son and that his name is Lee L. Wheeler; that the son's name was Virgil Lee Wheeler. "We call him Lee Wheeler," he said, Lee L. Wheeler is his son. Plaintiff further testified: "Lee, Virgil, or whatever it is, I couldn't say its supposed to be, his initials are supposed to be V. L." The witness said he had a son named Lee Wheeler and that was the man they were talking about; that he ran swabbing machines and water well machines and that he lived at Kilgore, Tex. The wife of plaintiff testified her husband was working for their son Virgil Lee Wheeler when he was injured; that they called the son both Virgil and Lee. The record also discloses that the defendant sometimes addressed the employer as Lee Wheeler, P. O. Box 1092, Kilgore, Tex.

■ There was no objection urged by defendant to the introduction of the testimony above referred to, either because it was at variance with the allegations, or because defendant was surprised or that it had been misled in any particular. The general rule seems to be well settled that, if a complaining party makes no objection to the introduction of testimony because it is at variance with the pleadings, he cannot thereafter take advantage of it by a request for a peremptory instruction. Bland v. Cruce (Tex.Civ.App.) 238 S.W. 720; Orange & N. W. Ry. Co. v. Tatum (Tex.Civ.App.) 261 S. W. 421 (writ dismissed); Brown Cracker Co. v. Johnson (Tex.Civ.App.) 154 S. W. 684 (writ refused).

■ It is equally well settled by the decisions of this state that, if a party objects to the introduction of testimony because of a variance between the allegations and proof and his objections are overruled, it is incumbent upon him to make known to the court his surprise at the testimony and show he has been misled thereby, before he can raise the question for the first time on appeal. Nickels v. Gilmore (Tex.Civ.App.) 293 S.W. 884; Brown Cracker Co. v. Johnson, supra; Fowler Commission Co. v. Land & Co. (Tex.Com.App.) 248 S.W. 314; Federal Surety Co. v. Ragle (Tex.Civ.App.) 25 S.W.(2d) 898, 902, affirmed (Tex.Com.App.) 40 S.W.(2d) 63; Maryland Casualty Co. v. Overstreet (Tex.Civ.App.) 42 S.W.(2d) 160.

In the Surety Co. v. Ragle Case, supra (a compensation case), Chief Justice Conner, speaking for this court, said: "In every case, to be fatal, a variance must be such

as to surprise or mislead the parties to be charged."

Judge Sharp, then on the Commission, in affirming the Ragle Case, 40 S.W.(2d) 63, 66, said: "The courts, as a general rule, have given the compensation statutes a liberal construction"; and sets out very wholesome reasons for such a construction. While we feel fully justified in every conclusion announced herein, yet the liberality thus enjoined upon inferior courts by our Supreme Court strengthens us in the belief that the principles adhered to by us do not work a hardship upon any one.

We are not unmindful of the cases of New Amsterdam Casualty Co. v. Harrington (Tex.Com.App.) 290 S.W. 726, 727, and Texas Employers' Ins. Ass'n v. Horn (Tex.Civ.App.) 75 S.W.(2d) 301, the latter decided upon the ruling in the former. We had occasion to discuss the former case recently in Southern Underwriters v. Shipman, 97 S.W.(2d) 370 (writ dismissed), on a point in some respects similar to the one now before us. The opinion in the Harrington Case, supra, does not indicate whether objection was made upon the trial to the introduction of testimony concerning the injury, nor as to the parties, upon the ground that there was a variance, or surprise. We think the distinction between that case and the one here lies in the fact that the subscriber in the Harrington Case was in fact a copartnership and the proof showed plaintiff received injuries while working for an individual. It was there held: "A copartnership is a legal entity distinct from the individual members composing it, and the allegation that Gragg was Harrington's employer is not shown by proof that a copartnership composed of Gragg and others was his employer." Here we have an allegation that a man of certain given initials was the subscriber, and proof that injuries were received while working for that same man though his initials are given differently, but of the same given name, by which he was commonly known. To constitute a variance such as that claimed here by defendant, it must appear that the subscriber and the employer are different persons. The assignment of error must be overruled.

Defendant's fourth assignment of error challenges the right of the court to submit special issue No. 9, which, with its answer, reads: "From a preponderance of the evidence what was the average weekly wage of plaintiff, if any, at the time of his injury? Answer: $48.00." By way of explanation the court added: "In answering the above issue you are instructed that you will compute such average weekly wage, if any, in any manner which may seem just and fair to both plaintiff and defendant."

The objection to the issue is that the evidence was insufficient to authorize the court to submit to the jury the wage rate of plaintiff, or the wage rate of plaintiff to be computed under subdivision 3 of section 1 of article 8309, Rev.Civ.Statutes.

We have shown above that the pleadings were alternatively stated. Plaintiff testified he had been employed, he believed, for as much as 300 days during the year next preceding the date of his injury, at an average daily wage of $8 per day; but stated he kept no account of the time he worked. On cross-examination he admitted he had lost 99 days in 3½ (4½) months from April 16, 1934, to September 1st of the same year; he clearly showed he was wrong in his first estimate of having worked 300 days during the year next preceding his injury.

Plaintiff put his son, V. L. Wheeler, on the stand, and on cross-examination he testified that his father worked only 14 days, using the highest estimate of the witness each time, between April 16th and August 1, 1934. Plaintiff also proved by the two Dosses that they were drillers in the vicinity of the place where plaintiff was injured; that they were acquainted with drilling operations in that vicinity and they knew of no person who had worked substantially all the time for as much as a year preceding September 1, 1934; that the average daily wage for drillers, such as plaintiff, was from $6 to $12 per day. Under the rule announced in American Employers' Insurance Co. v. Singleton (Tex.Com.App.) 24 S.W. (2d) 26, it was necessary for plaintiff to prove it impracticable to compute the average wage under subdivisions 1 and 2 of section 1 of article 8309 before he could resort to proof thereof under subdivision 3, as was done in this case. We believe the evidence was sufficient for the court to conclude the conditions of the rule announced had been met, and therefore the provisions of subdivision 3 would control. This was the explanation given by the court to the jury by which they were to answer the issue given. The assignment must therefore be overruled.

Another objection was made to special issue No. 9, last discussed, based upon the theory that the inquiry was restricted

to the time of the injury, when it should have been based upon such facts and circumstances as the wages earned within a year prior thereto. We do not see how the jury could have been misled in this respect, since all the facts concerning plaintiff's previous wages were before them; the testimony shows plaintiff drew $8 per day at all times when he worked for more than a year before the injury. The assignment is overruled.

Under the sixth assignment the following proposition is urged: "In a Workmen's Compensation suit, where the pleadings and evidence represent both the issue of permanent partial disability and temporary partial disability, it is error for the court to instruct the jury that if they have answered an issue to the effect that partial disability is permanent, that they need not answer an issue as to how long the partial disability will exist."

The issues and their answers, in so far as applicable to this proposition, are as follows:

"Special issue No. 5: Do you find from a preponderance of the evidence that the plaintiff was partially disabled as a result of such injury, after the period of total disability, if any, ceased? Answer: Yes."

Special Issue No. 6 and its answer found plaintiff's partial disability, after the expiration of the total disability period, would be 50 per cent.

"Special Issue No. 7: If you have answered special issue No. 5 in the affirmative, then you will answer this issue, but if you have answered special issue No. 5 in the negative, then you need not answer this issue:

"Do you find from a preponderance of the evidence that such partial disability of the plaintiff, if any, as referred to in special issue No. 5, is permanent? Answer: Yes."

"Special Issue No. 8: If you have answered the foregoing issue in the negative, then you will answer special issue No. 8, but if you have answered same in the affirmative, then you need not answer this issue:

"From a preponderance of the evidence, for what period of time, if any, did or will the plaintiff be partially disabled, if any, after the period of total disability, if any, ceased?" Not answered.

Defendant claims it was error for the court to instruct the jury that, if they had answered an issue, and said that a partial disability was permanent, they need not answer an issue as to how long such partial disability will continue to exist; but insists special issue No. 7 should have been submitted without the preamble, and that it should have been answered irrespective of how special issue No. 5, or any other issue, was answered.

Under defendant's general denial, it was entitled to have all defensive matters submitted to the jury for determination. Commercial Standard Ins. Co. v. Noack (Tex.Com.App.) 62 S.W.(2d) 72, and the authorities there cited. The testimony clearly authorized the submission of an issue as to whether or not plaintiff would suffer a partial disability after his total disability should cease. This was embraced in special issue No. 5.

It is the preamble to No. 7 that is complained of. We repeat: "If you have answered special issue No. 5 in the affirmative, then you will answer this issue, but if you have answered special issue No. 5 in the negative, then you need not answer this issue." That is to say, if the jury should find there was a partial disability after the total disability ceased, then they should determine by answer to issue No. 7 whether or not that partial disability would be permanent. This preamble also meant that, if the jury should find under special issue No. 5 there was no partial disability after the expiration of the plaintiff's total disability, then they need not answer No. 7. We fail to see how defendant could possibly be harmed by this preamble. It was only in the event there was a partial disability period to follow the total disability that No. 7 should be answered at all. If such a period did not exist, defendant would not be liable for compensation, and, if such a period did come, as was found by the jury, then and only then, would defendant be interested in whether or not the disability was permanent or temporary. No. 5 was answered in the affirmative, and the jury therefore answered No. 7 and gave defendant everything it could have gotten had the preamble not preceded the issue. No useful purpose could have been served by having the jury determine whether a disability which did not exist was either permanent or temporary. It has been recently held that it is not required of a court to submit an issue twice in a different form. Texas Employers' Ins. Ass'n v. Horn (Tex.Civ. App.) 75 S.W.(2d) 301; Wichita Valley Ry. Co. v. Williams (Tex.Civ.App.) 6 S.W.

(2d) 439 (writ denied); Hutton v. Burkett (Tex.Civ.App.) 18 S.W.(2d) 740 (writ refused). We are supported in our conclusions by the cases of Maryland Casualty Co. v. Swanson (Tex.Civ.App.) 91 S.W.(2d) 843 (writ dismissed); Casualty Reciprocal Exchange v. Stephens (Tex.Com.App.) 45 S.W.(2d) 143.

The cases cited by defendant in support of its contention are distinguishable from the principle here under consideration and it would unnecessarily prolong this opinion to discuss each. The assignment must be overruled.

■ The last assignment of error presented complains of the action of the trial court in refusing to define the word "injury," as used in the several issues submitted. In this case the record discloses the plaintiff received serious injuries by being struck in the face with an iron bar when it became entangled in the clutch on the drilling machine while he was spooling a line; the blow split his face open, destroyed one eye, and seriously damaged the other; from the effect of the blow he was unconscious from the time it was received until after he was taken to a hospital; his injuries have affected other parts of the body as detailed by several witnesses. Not one word of testimony offered by defendant have we found in the record attempting to dispute or contradict these primary facts; it was shown, however, that subsequent to the accident the plaintiff was engaged in other labor which may be said to be gainful; but these matters went alone to the permanency of the total disability. We think under the proper kind of a case, where any testimony of probative force is offered tending to raise the issue of whether or not the claimant received an injury, such a definition should be given.

In the cases of Commercial Standard Ins. Co. v. Noack (Tex.Com.App.) 62 S.W.(2d) 72, Associated Indemnity Corporation v. Wilson (Tex.Civ.App.) 41 S.W.(2d) 143, and Indemnity Ins. Co. v. Sterling (Tex.Civ.App.) 51 S.W.(2d) 788, cited by defendant, it was held that the definition of the word "injury" should have been given; but as we read those decisions we think the distinction between them and the matter before us is apparent. In each of those cases the issue of whether or not the complaining party had in fact received an injury for which compensation should be allowed was hotly contested. But when it is established beyond question that an injury has been received by one under circumstances which would entitle him to compensation, and nothing is shown to the contrary, a different question is presented.

■ It is so well settled in this state that uncontroverted facts need not be submitted to the jury for determination we deem it unnecessary to discuss it or cite authorities confirming the statement. The case of Fidelity & Casualty Co. of New York v. Branton (Tex.Civ.App.) 70 S.W.(2d) 780 (writ dismissed), is directly in point and coincides with the view we take on the subject, and there is little we can add to what is there said.

All assignments of error are overruled, and the judgment of the trial court is affirmed.