## MARYLAND CASUALTY CO. v. FOOTE.
### No. 2008.

Court of Civil Appeals of Texas. Eastland.
April 5, 1940.

Rehearing Denied April 26, 1940.

Smith & Eplen, of Abilene, for appellant.

Stinson, Hair, Brooks & Duke, of Abilene, and Smith & Smith, of Anson, for appellee.

GRISSOM, Justice.

In a workman's compensation case plaintiff, Elvis Foote, recovered judgment against the defendant, insurer, for 50 weeks' total incapacity and 100 weeks' partial incapacity. From the judgment defendant, Maryland Casualty Company, has appealed.

Plaintiff's petition contained the usual preliminary allegations in a workman's compensation case. He further alleged that on August 15, 1938 while plaintiff was employed by and working for H. L. Rice, the insured, and while engaged in his regular course of employment and in furtherance of the business of his employer in Taylor County he was injured; he alleged the injury and the manner of its occurrence in detail, and that as a result of said injury plaintiff was totally disabled for performing labor for a period of 100 weeks, with a subsequent partial disability of 75 per cent and that said partial incapacity was permanent. Section 3 of plaintiff's petition was as follows:

"That plaintiff was employed at the time of said accidental injury as a laboring hand and performing the usual tasks of a laborer for his employer and plaintiff was being paid a wage of $2.40 per day, working 6 days a week, that the class of work that plaintiff was doing he had been so engaged in the same or similar kind of work, whether for the same employer or other employers, for the whole or substantially the whole of the year next preceding the date

of said accidental injury on the 15th day of August, 1938, and had drawn an average daily wage of $2.40 per day for the whole or substantially the whole of the year next preceding the date of said accidental injury and his annual income had been $720 covering the whole of said year next preceding the date of said injury, that plaintiff's compensation rate should be calculated under Subdivision 1, Section 1 of Article 8309 on the basis of plaintiff's annual earnings for the year next preceding the date of said accidental injury.

"Plaintiff pleads in the alternative and says that if it should be determined upon the trial of this cause that he had not been continuously employed for the whole nor substantially the whole of the year next preceding the date of said accidental injury and that Subdivision 1, Section 1 of Article 8309 could not be applied, then plaintiff says there were other employees doing the same or similar kind of work in the same neighborhood as that of plaintiff at the date of such injury who had been so employed for the whole or substantially the whole of the year next preceding the date of the 15th day of August, 1938 and whose average daily wage had been $2.40 per day, or $720.00 annual earnings· and that plaintiff's compensation should be calculated in that event under Subdivision 2, Section 1 of Article 8309 on the basis of such other employees wage rate.

"But, plaintiff further pleads in the alternative and says if it should be determined upon the trial of this cause that Subdivisions 1 nor 2 of Section 1 of Article 8309 could not be applied, then plaintiff says that on account of the shortness of the length of time that he had been so employed by his employer which was less than substantially the whole of the year next preceding the date of said accidental injury, then and in that event plaintiff's compensation should be calculated under Subdivision 3, Section 1 of Article 8309 in such way and manner as would be just and fair to all parties concerned; but plaintiff would show that on account of the nature of his injury that he is entitled to 100 weeks total compensation at the rate of $8.31 per week, with a 75% partial disability for a period of 300 weeks beginning at the expiration of said 100 weeks and that plaintiff is entitled to $6.24 per week for a continuous period of 300 weeks."

To said section 3 of plaintiff's petition, the defendant excepted as follows:

"Defendant specially excepts to said plaintiff's first amended original petition on the ground that Section '3' thereof, which is composed of three paragraphs, alleges conflicting grounds for recovery in attempted alternative counts, and fails to expressly or by reference group into separate counts the particular and consistent facts warranting any certain or definite relief sought and such paragraphs so grouped present alleged rights of the plaintiff to a judgment on conflicting theories which should be in separate counts.

"Wherefore, defendant prays that such portion of plaintiff's said amended petition be stricken and dismissed, and that said petition as a whole be dismissed."

Said special exception, or demurrer, was overruled. Said action of the court is made the basis of appellant's first proposition. In support of said proposition and as authority upon which defendant relies for the reversal of the judgment, for said reason, defendant cites Moore v. Rice, Tex.Civ. App., 80 S.W.2d 451; Jennings v. Texas-Farm Mort. Co., 124 Tex. 593, 80 S.W.2d 931; Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031.

We are of the opinion that the court did not err in overruling the exception. It will be observed from reading the petition that plaintiff alleged the injury and the facts common or necessary to a recovery under any of the three subdivisions of Art. 8309, relative to the manner of fixing the compensation rate. Thereafter, in section 3 of his petition, in separate alternative counts, plaintiff alleged facts bringing him within each of the three subdivisions of Art. 8309, fixing his wage rate. The proposition is overruled. See Pryor & Wilson v. Moody, Tex.Civ.App., 49 S.W.2d 506; Davies v. Texas Emp. Ins. Ass'n., Tex.Com.App., 16 S.W.2d 524, 525; Texas Emp. Ins. Ass'n. v. White, Tex.Civ. App., 32 S.W.2d 955, 958; Traders' & Gen. Ins. Co. v. Williams, Tex.Civ.App., 66 S. W.2d 780, 784; International & G. N. Ry. Co. v. Acker, Tex.Civ.App., 128 S.W.2d 506, 517; Traders & Gen. Ins. Co. v. Huntsman, Tex.Civ.App., 125 S.W.2d 431, 433; Hartford· Acc. & Ind. Co. v. Leigh, Tex.Civ.App., 57 S.W.2d 605, 606; Indemnity Ins. Co. of North America v. Bailey, Tex.Civ.App., 50 S.W.2d 484, 489; Traders & Gen. Ins. Co. v. Rouse, Tex.Civ.App., 39 S.W.2d 80, 81; Morris v. Sanders, Tex. Civ.App., 55 S.W.2d 594.

Defendant's second proposition is as follows: "The evidence in this case being insufficient to prove that appellee suffered any total incapacity for work, but showing on the contrary that appellee did not suffer total incapacity, the District Court should have sustained appellant's exceptions to the court's charge referable to the issues touching upon total incapacity and should have refused to enter judgment for appellee for any compensation based on total disability."

An examination of the evidence convinces us that there is testimony raising the question of plaintiff's total incapacity. There is evidence that during the time plaintiff was found to be totally incapacitated he did some work. Plaintiff testified, in substance, that he did some work during the period of total incapacity found by the jury when it was very painful for him to do so, for the reason that he felt compelled to do the work in order to maintain and support his family.

■ We think the evidence raised the issue and brings it within the discussion of the subject in the following authorities: 45 Tex.Jur. 589; Davies v. Texas Emp. Ins. Co., Tex.Com.App., 29 S.W.2d 987. Defendant's second proposition is overruled.

The defendant contends that the answers of the jury are in irreconcilable conflict and cannot support the judgment rendered. In view of the fact that the judgment must be, for the reason hereafter stated, reversed, it is unnecessary for us to determine this question, as it will probably not arise upon another trial. However, we will briefly call attention to the situation disclosed by the record.

In answer to issue No. 5 the jury found that Foote became totally incapacitated on or about August 15, 1938. In answer to issue 7 that Foote's total incapacity began August 15, 1938; in answer to issue 8 that plaintiff's total incapacity had not ceased at the time of the verdict, to-wit, April 5, 1939; (9) that Foote would be totally incapacitated for 50 weeks. (According to our calculations, 50 weeks of total incapacity from August 15, 1938, would result in total incapacity to July 24, 1939.)

With reference to partial incapacity the court submitted issue 10 as follows: "From a preponderance of the evidence do you find that Elvis Foote's incapacity for work, if any, since August 15, 1938 has not been partial incapacity, as that term is defined to you in subdivision (d) of this charge? Answer: 'His incapacity has not been partial', or 'His incapacity has been partial.'" The jury answered "His incapacity has been partial." Issue 11 was "From a preponderance of the evidence give the date that Elvis Foote's partial incapacity begun, if any." (Italics ours) The jury answered "August 1, 1939." In answer to issue 12 the jury fixed the number of weeks of Foote's partial incapacity at 100 weeks. Issue 13 was "From a preponderance of the evidence do you find that Elvis Foote's partial incapacity, if any he has, will be permanent?" The jury answered "Yes." Issue 14 was "From a preponderance of the evidence what percent of partial incapacity to work has or will Elvis Foote suffer, if any?" The jury answered "50 percent."

■ Construing the verdict of the jury as a whole and in connection with the pleadings, it is perhaps susceptible to the construction that the jury intended to find that Foote became totally incapacitated on August 15, 1938, and that his total incapacity would continue from that date for a period of 50 weeks, and (in connection with issue 11, wherein the jury found, on April 5, 1939, that Foote's partial incapacity "begun" August 1, 1939) that Foote's partial incapacity would begin thereafter on August 1, 1939. This, according to our calculations, would have the period of total incapacity ending on July 24, 1939, and the period of partial incapacity beginning about one week thereafter, on August 1, 1939. This was probably the result of a miscalculation of the number of weeks in the period mentioned. Another problem is presented by the answer to issue 12, that the number of weeks of Foote's partial incapacity is 100 and the answer to issue 13, that Foote's partial incapacity will be permanent. It is apparent that the findings that Foote will be partially incapacitated for 100 weeks and that his partial incapacity is permanent are in conflict to the extent of the finding of partial incapacity after the end of the 100 weeks' period. However, no judgment was rendered as to said period, and, as to partial, or 50 per cent incapacity, the judgment was only for 100 weeks. The judgment apparently is in accord with the decision of our Supreme Court in Fidelity & Cas. Co. v. McLaughlin, Tex.Sup., 135 S.W.2d 955, 958.

Issue No. 14 was "From a preponderance of the evidence what percent of partial incapacity to work has or will Elvis Foote suffer, if any? Answer in percent, letting 100 represent total." The jury answered said issue "50 per cent."

■ It is contended that the issue is duplicitous, having reference particularly to the words "has or will." The only authority cited by defendant is Traders & Gen Ins. Co. v. Shelton, Tex.Civ.App., 130 S.W.2d 903. In the Shelton Case, in connection with a similar issue, the jury was instructed as follows: "If you find from a preponderance of the evidence that he has not or will not suffer any partial incapacity, let your answer be 'No,' otherwise you will answer 'Yes.'" As we understand the opinion in the Shelton Case the submission of the issue was held to be reversible error because of the instruction accompanying the issue. In said opinion it is pointed out that such submission of the issue, in the absence of such explanation or instruction, had been many times held not to be the submission of a duplicitous issue. Such cases so holding are: Traders & Gen. Ins. Co. v. Patterson, Tex.Civ.App., 123 S.W.2d 766, par. 11; Fidelity & Cas. Co. of New York v. Branton, Tex.Civ.App., 70 S.W.2d 780, par. 13; Maryland Cas. Co. v. Brown, Tex.Civ.App., 110 S.W.2d 130; Traders' & Gen. Ins. Co. v. Baker, Tex.Civ.App., 111 S.W.2d 837.

The proposition is overruled.

In issue 5 the court inquired whether Foote became totally incapacitated on August 15, 1938. The jury answered "Yes." Following issue 5 the jury was instructed that it was to answer issues 6 to 9, both inclusive, only in the event it answered issue 5 "yes." Said issues, so conditionally submitted, inquired: (6) Whether Foote's total incapacity was the result of the accidental injury of August 15, 1938 (answered, yes); (7) when Foote's incapacity for work began (answer: "Aug. 15, 1938"); (8) the date total incapacity ceased (answer: "Has not ceased"); and (9) asked the jury to fix the number of weeks of total incapacity. The answer to issue 9 was "Fifty Weeks."

In issue 10 the jury was asked whether Foote's incapacity for work "since August 15, 1938 has not been partial." The jury answered: "His incapacity has been partial." Following issue 10 the court instructed the jury to answer issues 11 to 14, inclusive, only in the event it found Foote's incapacity "has been partial." Said issues, so conditionally submitted, inquired: (11) The date partial incapacity began (answer: "Aug. 1st, 1939"); (12) asked the jury to fix the number of weeks of partial incapacity (answer: "100 weeks"); (13) whether Foote's partial incapacity would be permanent (answer: "yes"); (14) what percent of partial incapacity did Foote suffer (answer: "50%").

The defendant objected to the conditional submission of said issues 6 to 9, inclusive, and 11 to 14, inclusive, and further objected to them upon the ground that said issues were upon the weight of the evidence. We call attention particularly to issue No. 10 in which the question was asked whether Foote's incapacity since August 15, 1938, "has not been partial", and the answer of the jury thereto that his incapacity "has been partial", and the conditional submission thereafter, in issue 13, of the question whether Foote's partial incapacity was permanent. The jury found plaintiff's partial incapacity was permanent and, in answer to issue 14, that plaintiff's partial incapacity was 50 per cent.

In Southern Underwriters v. Wheeler, Tex.Civ.App., 108 S.W.2d 846, 851, by its special issue No. 5, the court submitted the question whether Wheeler was partially disabled after the period of total disability ceased. The jury answered that issue "yes." In answer to special issue No. 6 the jury found that Wheeler's said partial disability amounted to 50 per cent. Special issue No. 7 inquired whether Wheeler's said partial disability was permanent. This issue was submitted conditionally, that is, to be answered only in the event that in answer to issue 6 the jury had found Wheeler was partially disabled after the period of his total disability ceased. Issue 7 was answered, the jury finding Wheeler's partial disability was permanent. The conditional submission of said issues was objected to by defendant. The court of civil appeals held that such conditional submission did not constitute reversible error. The Supreme Court held that it was reversible error.

■ We think there is no ground for distinction between the situation in the Wheeler Case and that heretofore pointed out in detail in the instant case. We are, therefore, constrained to hold that such conditional submission constituted reversible error. Also, see Traders & Gen. Ins. Co. v. Wright, Tex.Civ.App., 95 S.W.2d

753, affirmed 132 Tex. 172, 123 S.W.2d 314, 315, wherein the Supreme Court said: "Plaintiff Wright pleaded both total and partial disability, the latter alternately. Defendant pleaded only a general denial on the merits of the case. There was evidence to support both issues as well as the related issues of temporary total and temporary partial disability. The related issues need not be noticed further since *the manner of their submission will be controlled by the principles applicable in submitting partial disability presently to be discussed.*" (Italics ours).

In the Wheeler Case "the primary issue inquiring whether partial disability resulted after total disability had ceased, was correctly submitted unconditionally" by issue 5, 132 Tex. 350, 123 S.W.2d 340. In the instant case, by issue 10, the issue of partial incapacity was submitted unconditionally. In the Wheeler case the question of whether Wheeler's partial disability was permanent was conditionally submitted by issue 7. The jury answered the issue "yes." In the instant case, by issue 13, the question whether Foote's partial incapacity would be permanent was submitted conditionally. The jury answered the issue "yes."

Relative to this situation in the Wheeler Case the court of civil appeals said [108 S.W.2d 851]: "It is the preamble to No. 7 that is complained of. We repeat: 'If you have answered special issue No. 5 in the affirmative, then you will answer this issue, but if you have answered special issue No. 5 in the negative, then you need not answer this issue.' That is to say, if the jury should find there was a partial disability after the total disability ceased, then they should determine by answer to issue No. 7 whether or not that partial disability would be permanent. This preamble also meant that, if the jury should find under special issue No. 5 there was no partial disability after the expiration of the plaintiff's total disability, then they need not answer No. 7. We fail to see how defendant could possibly be harmed by this preamble. It was only in the event there was a partial disability period to follow the total disability that No. 7 should be answered at all. If such a period did not exist, defendant would not be liable for compensation, and, if such a period did come, as was found by the jury, then and only then, would defendant be interested in whether or not the disability was permanent or temporary. No. 5 was answered in the affirmative, and the jury therefore answered No. 7 and gave defendant everything it could have gotten had the preamble not preceded the issue."

Relative thereto the Supreme Court said 132 Tex. 350, 123 S.W.2d 340, 341:

"In the present case the primary issue inquiring whether partial disability resulted after total disability had ceased, was correctly submitted unconditionally; but the secondary issues inquiring respectively whether the partial disability, if any, resulting after total disability had ceased, was permanent, or was temporary, were submitted conditionally, the jury being directed in the respective preambles to the special issues to answer same conditioned on how it had answered some previous issue.

"The decision in the Wright Case is controlling here. The secondary issues referred to are the converse one of the other, not opposite one to the other, and both should have been unconditionally submitted. The fact that the primary issue was submitted unconditionally did not obviate the necessity of submitting unconditionally the secondary issues. The restriction imposed by the condition stated in the preambles should have been eliminated upon objection urged in the trial court, and affirmance of the judgment predicated upon conditional submission of the issues constitutes reversible error."

The case of Traders & Gen. Ins. Co. v. Stakes, Tex.Civ.App., 131 S.W.2d 270, writ ref., relied upon by the plaintiff, is distinguishable from the Wheeler and the instant case as suggested by Judge Taylor in the Wheeler Case, by the fact that the issue of partial incapacity in the Stakes Case, unconditionally submitted, was answered in the negative. The opinion of Justice Higgins in the Stakes Case recognizes the decision in the Wheeler Case, as heretofore interpreted by us, and plainly rests its decision upon such distinction.

The other cases cited by the plaintiff are thought not to be directly in point, but whether they are or not, we are bound by the decision of the Supreme Court in the Wheeler Case.

The judgment is reversed and the cause remanded.

Rehearing denied.

FUNDERBURK, Justice (dissénting).

The writer concurs in the view that this case upon the point which has been deemed controlling is not distinguishable from the Wheeler Case, Southern Underwriters v. Wheeler, 132 Tex. 350, 123 S.W.2d 340. Ordinarily, of course, the determination of that question ought to end the inquiry and leave remaining only the simple duty to reverse and · remand the case as we have done. There may be those who question whether under any circumstances any other course can be justified. If accepting the higher court's interpretation of the law, a lower court is clearly of opinion that the former has in a particular case made a mistake in ' the application of the law, the question is posed: Should the law, or the application, · be given controlling effect? Should the interpretation of the law with its general effect control, or should a particular application of the law, believed to be the result of mistake and unwarranted by the higher court's interpretation of the law, control? Fully recognizing that the question is a delicate one, the writer believes that it will better serve the jurisprudence of the State, under such circumstances, for the inferior court to apply the law as interpreted by the superior court, to the particular case before it, the parties having their remedy in a case of error and at the same time the higher court being afforded the opportunity to remedy its previous inadvertent misapplication of the law, provided, of course, upon the further consideration of the question it be recognized that there was such mistake.

The writer must admit an inability to understand all 'that is said and possibly implied in the Wright Case, Wright v. Traders & Gen. Ins. Co., 132 Tex. 172, 123 S.W.2d 314, but it is believed the uncertainties are not such as to enter into or materially affect the controlling question here presented.

The questions for decision in the Wright Case related to four special issues submitted to the jury which, stated briefly and informally with reference to the findings elicited thereby, were: (1) Was disability, if any, total? (2) Was disability, if any, partial? (3) Was total disability, if any, permanent? (4) Was partial disability, if any, permanent?

For clarity and brevity, said issues, as above designated by the numbers 1 to 4, inclusive, may hereinafter be referred to thus: (1) Total disability, (2) partial disability, (3) permanent total disability, and (4) permanent partial disability. The action of the trial court, held to be error, was in submitting· each of the issues, partial disability and permanent partial disability, upon condition that the issue of total disability was answered to the effect that the disability was not total. The issues of permanent total disability and permanent partial disability were referred to in the majority opinion of this court as "temporary total and temporary partial disability", the opinion stating that "The issues with reference to the temporary total and temporary partial incapacity were likewise conditionally submitted and were not answered. That which has been said with reference to the conditional submission of 'the issue of partial incapacity is applicable to them." There were no issues of "temporary total and temporary partial incapacity" as distinct from said issues of permanent total disability and permanent partial disability, respectively, as aforesaid. In the Supreme Court the same issues were referred to as "related issues" in language as follows: "There was evidence to support both issues, [total disability and partial disability] as well as the *related* issues of *temporary total and temporary partial disability*. The related issues need not be noticed further since the manner of their submission will · be controlled by the principle applicable in submitting partial disability presently to be discussed." (Italics ours)

It thus appears certain that the decision of the question relating to the issues of total disability and partial disability, that is, whether the latter was properly submitted, conditioned upon the answer to the former, was thought to be applicable and intended to apply to the issues of permanent total disability (referred to by the court as "temporary total disability") and permanent partial disability (referred to by the court as temporary partial disability").

With reference to the question concerning the propriety of submitting conditionally the issue of partial disability in its relation to the issue of total disability, the court classified issues as "opposite issues" and "converse issues." It was held that the law does not require that both of two "opposite issues"· be submitted, giving as an example of opposite issues " 'Was such negligence the proximate cause of the injury?' 'Was such negligence not the proximate cause of the injury?' " But it was held that "converse issues" must be sub-

mitted unconditionally. The meaning of "converse issues" was explained thus: "The issues submitting the two inquiries as to the result of the injuries—one whether total and the other whether partial—are converse but not opposite.". Much of the opinion is devoted to a re-affirmation of the doctrine of the Rowe Case, criticized in the minority opinion of the Court of Civil Appeals. The most important new pronouncement (stated in our own language, rather than that of the court) was to the effect that where an issue is a plaintiff's issue in the sense that it constitutes an element of an alternative ground of recovery, but the subject matter of such issue is also a defendant's issue in the sense that a finding thereof in favor of the defendant would rebut the existence of plaintiff's other ground of recovery, in such case the court may submit plaintiff's issue and the defendant's issue as a single issue and if, as a defendant's issue, it is a converse issue it will be error to submit conditionally the dual issue. To state the point differently, it was held, in effect, that the issue of partial disability was a plaintiff's issue and also defendant's issue, being the converse of the plaintiff's issue of total disability; that it was required (under the doctrine of the Rowe Case) to be submitted and under other decisions required to be submitted unconditionally; that it was not necessary, however, to submit two issues, nor by the form of the single issue to place upon the plaintiff the burden of establishing by a preponderance of the evidence that the disability was not temporary. This last question was not really involved in the Wheeler case.

In the Wheeler case, the issues corresponding to those referred to in the Wright case as "related issues" were called "secondary issues." The issue of partial disability (following a period of total disability) was called the "primary issue." Of this issue it was said: "In the present case, the primary issue inquiring whether Partial Disability resulted after Total Disability had ceased was correctly submitted unconditionally." Of the "secondary issues" it was said that "the secondary issues inquiring, respectively, whether the partial disability, if any, resulting after total disability had ceased was permanent, or was temporary, were submitted conditionally, the jury being directed in the respective preambles to the special issues to answer same conditioned on how it had answered some previous issue." (Italics ours).

As said before, there was no issue of partial temporary disability, as distinct from the issue of partial permanent disability, submitted. The issue referred to as the "primary issue", the unconditional submission of which was approved, was special issue No. 5 as follows: "Do you find from a preponderance of the evidence that the plaintiff was partially disabled as the result of such injury after the period of total disability, if any, ceased?" The "secondary issue", the conditional submission of which was condemned, was special issue No. 7, "Do you find from a preponderance of the evidence that such partial disability of the plaintiff, if any, as referred to in special issue No. 5 is permanent?" To repeat: *There was no issue submitted, the purpose of which was to elicit a finding of whether or not partial disability, if any, was temporary.* This emphatic statement is made upon the assumption that the court did not mean that said special issue No. 7 above quoted was such issue. That would destroy the foundation of the doctrine of the Rowe Case at one stroke. It would, in effect, be an admission that an issue of whether a disability is permanent and an issue of whether a disability is temporary are one and the same thing. It would mean, in a negligence case, that the court could not submit an issue of proximate cause conditioned upon a finding of negligence, since thereby the court would be conditionally submitting, without mention, the defendant's issue of unavoidable accident, or of new and independent cause, etc. It is of the very essence of the doctrine of the Rowe Case, that issues denominated "converse issues" are distinct issues.

The conditionally submitted issue of partial disability involved in the Wright Case was considered as one issue, not two. It was, in effect, held that just because if it was the plaintiff's issue, alone, it should be stated: "Do you find from a preponderance of the evidence that the injuries, if any, sustained by the plaintiff * * * resulted in the partial incapacity of plaintiff" and if a defendant's issue alone, it should have been stated "Do you find from a preponderance of the evidence that the injury, if any, sustained by the plaintiff did *not* result in the partial incapacity of plaintiff", it was not necessary to submit the one issue as two issues on account of the question of the burden of proof, but that it was

within the court's discretion to submit it in the form properly as plaintiff's issue, a verdict for plaintiff upon the other form, if found, being insufficient to support a judgment for the plaintiff.

Surely, the court did not consider that two issues were actually submitted as one. That would have been a direct violation of the statute requiring that special issues be submitted "distinctly and separately" and answered by the jury "separately". R.S.1925, Art. 2190. It is the more reasonable conclusion, I think, that the court regarded the mere difference between an affirmative and a negative statement of one issue as not involving two distinct issues, but the mere form of the single issue. If so, the Wright Case, which was the sole authority for the decision in the Wheeler Case, would be no authority to support the proposition that a plaintiff's issue of partial permanent disability is at the same time the defendant's converse issue of partial temporary disability.

Under the decision in the Wright Case and the classification of issues there made as "opposite issues" and "converse issues" an issue of partial temporary disability would be the converse of the issue of partial permanent disability. While the latter issue was submitted the former was not submitted, conditionally or unconditionally. Had it been submitted it would have been error to condition its submission upon a finding of the issue of partial permanent disability to the effect that partial disability was not permanent. That question was not in the case and under the record could not be in the case, since no issue of partial temporary disability was submitted, or requested to be submitted. The issue submitted conditionally, namely, partial permanent disability, was, in relation to the issue of partial disability (after total disability ceased), neither an opposite, nor a converse, issue as the meaning of those terms is explained in the Wright and Wheeler Cases. Even if the issue of partial permanent disability, conditionally submitted, included the unmentioned issue of partial temporary disability, yet, nevertheless, the latter in relation to the unconditionally submitted issue of partial disability (following total disability) was itself neither an opposite nor a converse issue. Under the doctrine of the Rowe Case, as amplified in the Wright Case, it is believed to be an uncontrovertible proposition that a finding in favor of the defendant upon a defendant's issue which is the converse of a plaintiff's issue found in favor of the plaintiff will defeat any judgment for the plaintiff based upon plaintiff's said issue. For example, a finding in favor of the defendant of an issue of unavoidable accident and a finding in favor of the plaintiff upon the issue of proximate cause (defendant's negligence as cause of the injury) will result as a matter of law in defeating judgment for the plaintiff. The reason is, of course, that if one be true, then, as a matter of law, the other cannot be true. But upon the issues involved in the Wheeler case, and in the instant case, no possible answer to either issue can be inconsistent with the answer to the other. Let us say the jury answers the unconditionally submitted issue to the effect that there was no partial disability after total disability ceased. Result: no judgment for the plaintiff awarding recovery of compensation for any partial disability; full acquittance of defendant from any such liability. But say the jury answers the issue to the effect that there was partial disability after total disability ceased? Result: standing alone, the answer is wholly immaterial. It will support no judgment for the plaintiff; the defendant will be acquitted of liability just as certainly as if the issue were found to the contrary. This results, of course, from the burden being upon the plaintiff to establish the duration, if any, of such partial disability. To establish the duration, if any, of partial disability was the purpose, and the only purpose, of submitting the issue of partial permanent disability. It was a plaintiff's issue. *It was not a defendant's issue.* If answered to the effect that partial disability was not permanent, no judgment could be given for the plaintiff, or against the defendant, awarding compensation for any partial disability after total disability had ceased. Such finding of the issue would require judgment, so far as based upon that issue, in favor of the defendant.

If, however, the issue was answered to the effect that the partial disability was permanent, then, of course, the plaintiff would be given judgment (all other essential issues being established) for compensation for all the partial disability existing after total disability ceased. But, how could the defendant counter against the establishment of that issue? He could do so, of course, by offering rebuttal evi-

dence to persuade the jury that partial disability was not permanent. Under the doctrine of the Rowe Case he could do more than that. He could have an issue submitted designed to elicit a finding whether the "converse" of the issue of partial permanent disability was true. He was entitled to have the jury find whether, by a preponderance of the evidence, the partial disability was *not* temporary. Regardless of the fact that such issue has generally been supposed to impose the burden of proof upon the plaintiff to establish that disability, if any, was *not* temporary, the issue itself is nonetheless a defendant's issue. If the court omits to submit it the defendant must request its submission, or else the right to have it submitted will be waived. That issue was not submitted, conditionally or unconditionally, and, therefore, of course, there could be no question of any error in submitting it conditionally.

The mistake implicit in the opinion in the Wheeler case was the supposition that the trial court had submitted an issue of partial temporary disability and had submitted it upon condition that it was not to be answered unless the issue of partial permanent disability was answered to the effect that partial disability was not permanent. As already pointed out, neither the issue of partial permanent disability, nor the converse issue of partial temporary disability, had the latter been submitted, but was not, was either the opposite or converse of the issue of partial disability (following total disability). It is respectfully submitted that if the Su-

preme Court in the Wheeler case intended anything more than to declare that the question at issue was ruled by the principle upon which it had been declared in the Wright case that an issue of partial disability as the converse of the issue of total disability may not be submitted conditionally, then the opinion imports no such other intention, but just the contrary. If that was really the controlling principle, then it appears certain there was some mistake in its application. Hence, it is believed, the Wheeler case should not be regarded as controlling the decision of this case.

Independently of everything else that has been said all the conditionally submitted issues were answered. The conditional submission did not, therefore, result in depriving appellant of a verdict upon said issues. If the conditionally submitted issues had been "converse issues" (which, as shown, they were not), the reason why appellant would have had the right to object to their conditional submission was because of the hazard of being deprived of a verdict upon such issues. But what harm can possibly have resulted when the unconditional issue is answered in such way as to require answers to the conditionally submitted issues and the latter are in fact answered? It seems to me it would be hard to imagine a better example of an error affirmatively shown by the record to have been harmless. I should regard this conclusive, except for the fact that the same thing could have been said of the Wheeler Case.