## BROWN CRACKER & CANDY CO. v. JOHNSON.

(Court of Civil Appeals of Texas. March 8, 1913. Rehearing Denied March 15, 1913.)

1. MASTER AND SERVANT (§ 264*)—ACTION FOR INJURIES—ISSUES, PROOF, AND VARIANCE—POSITION OF COGS.

Under a petition in a servant's action for injuries, alleging injury from cogs on the inside of a dough mixer because of defective lights, proof that the cogs were on the outside of the mixer was not a material variance, since it could not have tended to mislead or surprise defendant upon the trial, and also since the position of the cogs was not a material issue.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

2. PLEADING (§ 430*)—OBJECTION ON GROUND OF VARIANCE—WAIVER.

When testimony at variance with the pleading is offered on the trial, it is then the duty of the complaining party to make known his surprise, and apply to withdraw his announcement of ready.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1438–1441; Dec. Dig. § 430;* Trial, Cent. Dig. §§ 219, 266.]

3. MASTER AND SERVANT (§ 206*)—MASTER'S LIABILITY—ASSUMPTION OF RISK.

A servant assumes the risks incident to his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 550; Dec. Dig. § 206.*]

4. MASTER AND SERVANT (§ 221*)—ASSUMPTION OF RISK—PROMISE TO REPAIR.

Where a baker requested the master to repair defective lights near his place of work, and had reasonable grounds to believe that the master's promise to do so would be complied with, he did not assume the risks from such defective lights by continuing in his employment a couple of days after such promise.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–647; Dec. Dig. § 221.*]

5. MASTER AND SERVANT (§ 288*)—SUFFICIENCY OF EVIDENCE—MASTER'S PROMISE TO REPAIR.

On the evidence, in a servant's action for injuries, held that the question whether the master had promised to repair defective lights near plaintiff's place of work was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

6. TRIAL (§ 260*) — INSTRUCTIONS — REPETITION.

Where the court has instructed the jury as to a particular issue, a party is not entitled to a repetition of such instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

7. TRIAL (§ 252*)—ACTION FOR INJURIES—INSTRUCTIONS—CONFORMITY TO PLEADING AND EVIDENCE.

In a servant's action for injuries to his hand from the cogs of a mixer, alleged to have been proximately caused by the master's failure to furnish reasonably safe lights at his place of work, where there was no evidence of oil or other substance on the floor, a requested

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

charge that if plaintiff's injuries were the proximate result of his slipping or falling, due to oil or other substance on the floor, he could not recover was not warranted by the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

8. MASTER AND SERVANT (§ 226*)—MASTER'S LIABILITY—ASSUMPTION OF RISK—CONCURRENT NEGLIGENCE OF MASTER.

A servant's assumption of obvious risks from cogs of machinery does not absolve the master of liability, if concurrently therewith the extinguishment of the light under which he was working, as a result of the master's failure to repair it, contributed to his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–667; Dec. Dig. § 226.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Thomas A. Johnson against the Brown Cracker & Candy Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Meador & Davis, of Dallas, for appellant. Cockrell, Gray, Thomas & McBride, of Dallas, for appellee.

RASBURY, J. Appellee sued appellant for damages for personal injuries, and upon trial before jury recovered verdict followed by judgment by the court, and from which this appeal is taken.

Appellee alleged that he was a baker, and was employed as such by appellant in its cracker and candy factory, and that while engaged in the performance of his duties, and while preparing to remove dough from a machine known as a dough mixer, operated by steam or electricity presumably, his hands became entangled in cogs on the inside of the mixer, whereby two of the fingers of his left hand were dismembered, and the others bruised and stiffened, the bone broken, and his left hand rendered almost worthless. The proximate cause of the injury was alleged to be failure of appellant to furnish reasonably safe lights; it being further charged that appellee's work was done under artificial lights, and that the lights furnished were dim, uncertain, and out of repair, and were so within the knowledge of appellant, whose officers had promised to repair the defects, and upon which promise appellee relied and continued in his work, but who nevertheless, while in the exercise of caution and while acting under the immediate instructions of appellant's foreman, was injured as alleged. Appellant answered by general and special demurrers, general denial, and pleas of assumed risk and contributory negligence.

[1] The first assignment of error asserts that the verdict should have been set aside and new trial awarded for the reason that it was alleged by the petition that the cogs which injured appellee's hand were on the inside of the mixer, whereas the evidence disclosed that the cogs were on the outside of the machine. The petition did allege the cogs to be inside the mixer, and the evidence does show as matter of fact the cogs were on the outside. We do not think, however, that the variance between the pleading and the proof is a material variance. To have been material it must have tended to mislead and surprise appellant upon trial, and if it did not have that effect then the variance was immaterial. McClelland v. Smith, 3 Tex. 210; Brown v. Sullivan, 71 Tex. 470, 10 S. W. 288; Railway Co. v. Evans, 78 Tex. 369, 14 S. W. 798; First National Bank, etc., v. Stephenson, 82 Tex. 435, 18 S. W. 583; Houston Light & Power Co. v. Hooper, 46 Tex. Civ. App. 257, 102 S. W. 133. Under the pleading and the evidence in the case the position of the cogs was not a material issue. On the contrary, the material issue was whether appellant was negligent in furnishing appellee defective lights to work under. If appellant was negligent in respect to the lights, and defective lights were the proximate cause of his injury, it was immaterial whether he was injured by placing his hands upon cogs inside or outside of the mixer, since the situation of the cogs could not have misled appellant as to the negligence charged and the issue to be met.

[2] The cases cited sustain the rule announced. They go further and hold that when testimony at variance with the pleading is offered on trial it is then the duty of the complaining party to make known his surprise and make application to withdraw his announcement of ready. Here no surprise is urged, no objection made to the introduction of the testimony, no charge requested for the purpose of correcting any injury or prejudice done. We conclude the point taken is well within the cases cited, and for that reason the assignment is overruled.

Appellant's second assignment of error complains of the refusal of the trial court to peremptorily direct a verdict for the defendant. Under this assignment appellant argues that appellee assumed the risks of his employment at the time of his injury, and that the evidence is insufficient to sustain the findings of the jury upon any other theory. A discussion of whether appellee assumed the risks incident to his employment is unnecessary, since the jury was told at the request of appellant that he did. The court went further, and eliminated every question in the case, except whether or not the lights and machinery at the factory were in good repair, and told the jury that appellee could not recover in any event unless appellee personally and directly requested that the machinery and lights, or either, be repaired, and that appellant made a specific, direct, and unequivocal promise to do so, and that appellee continued in appellant's service on account of such promise, and had reasonable

grounds to expect the promise would be fulfilled. By another special charge, given also at request of the appellant, the court further circumscribed the grounds of recovery by telling the jury that appellee knew that the cogs on the mixer were exposed, knew the lights were defective, and made complaint of their condition the day before he was injured and, such being the undisputed facts, appellee could not recover unless the jury believed from the evidence that appellant, after receiving notice of the condition of the lights, etc., promised to repair same.

[3-5] Thus, it will be seen that under the charge of the court it becomes our single duty in considering this assignment to ascertain if the testimony was sufficient to take to the jury the issue of whether or not there was a promise to repair the lights. On that question the following is practically all the testimony:

Appellee, Johnson, testified: "The only light I had in that room that morning was the little incandescent light over Bound's machine, and the arc light over my machine, which went out when I got hurt. I noticed that that was all. * * * When Drew (the foreman) came in I had started back then to throw this jam out. * * * He examined it, and I says, 'Shall I throw it out?' and he says, 'Yes.' * * * So I turned around and started around the east end of the mixer to do it. * * * I don't know whether I slipped or stumbled. * * * The first thing I remember I got caught this way. * * * I was familiar with the working of the machinery and how it was located in that room. I knew it was there, but of course I couldn't tell where it was as well in the dark as when I could see. Just when the lights went out and I says, 'Shall I throw it out?' and he says, 'Yes.' We don't have much time to waste, and I started to throw it out and fell in cogwheel. I walked back from Drew in the aisleway and—here is where I worked; here is the machine. I was hurt right here in this cogwheel. That is the length of time I was in the darkness—while I was walking from my machine down to this machine. * * * When this light over me went out, there was nothing left to give me light—total darkness. When my foreman told me to heave away it was dark. Just as he got up on the trough to look at the jam, the light went out, and I says to him, 'Shall I throw it out?' and he says, 'Yes.' I would not have done that if he had not told me to. I asked him whether I should or not, and he told me to, and I obeyed him. He was the foreman. * * * Coming back to the condition of the lights—the lights would blur and go out a minute and a half, or sometimes only a half minute. I told him (the foreman) I would not get up there and scrape down those mixers without lights. On Monday before I was hurt (on Wednesday) I called Mr. Drew's attention to it, 'When are you going to fix the lights?' and he says, 'As soon as

we can.' That was on Monday. When he told me on Monday that he was going to have them fixed, I believed him and relied on his promise to fix them. There was no arc light over Bound's machine on the morning I got hurt. I called the attention of both Drew and Keith to the light over me. Keith was the chief engineer and Drew the foreman. On the morning before this accident I spoke to Mr. Keith (chief engineer) about fixing the light, and he said the light had been troubling them for some months, and he had been back and forth fixing them the best he could, and as soon as he fixed one he would fix the others. * * * Bound's light was not up. They had promised to fix mine as soon as they put Bound's light back up. At the time I followed Mr. Drew's instructions I believed then that I could do what he told me with safety to myself. * * * I had no time to waste, not even a half minute. If it had not been dark my hand would not have gotten in the cogs. If it had not been dark I would have been safe."

Bounds, who was present at the time of the accident, testified how the room was lighted, the machinery situated, and that the foreman came in and inquired of plaintiff if the jam was all right, and plaintiff answered in the affirmative, and asked, "Shall I throw it out?" The foreman answered, "Yes." "The next thing I heard was a cry of agony from Mr. Johnson. * * * At the time he cried out in pain the light went out—the arc light. The light was out first. The little incandescent light in the hallway was not burning on that morning. The light in the hallway is burning all the time since Mr. Johnson got hurt. Had a conversation with Mr. Keith about a week before this accident in regard to condition of the lights; and he said he would give them attention. * * * He had taken my light down and was fixing it, and then he was going to take down Mr. Johnson's light. He had taken down Mr. Johnson's light once before—a week or couple of weeks before that. He had taken it down before Mr. Johnson, and I complained about it. In answer to complaints the foreman said, 'Yes, they are bum lights and ought to be fixed.' Johnson complained twice, and Drew said he 'had them in view, and that he would fix them.' "

Keith testified: "It was my duty to see that the building was properly lighted."

Drew, the foreman, testified: "He (Johnson) had fig jam in the mixer when I came in that morning. I gave him an order to shut the machine off, and he tried to obey my order, and while doing so got caught. It was his duty to obey me. If I had not told him to throw it out he would not have thrown it out right then."

The two special charges requested by appellant correctly told the jury the only condition upon which appellee could recover under the adduced testimony. Having assumed

the risks incident to his employment, it became necessary for appellee to show a request to repair the defective lights and a promise to do so by appellant, and that appellee had reasonable grounds to believe that the promise would be complied with. Having shown these facts, and that he relied on same, appellee did not assume the risk of his employment by continuing for a reasonable time in the discharge of his duties after such promise. Railway Co. v. Brentford, 79 Tex. 619, 15 S. W. 561, 23 Am. St. Rep. 377; Railway Co. v. Baker, 35 Tex. Civ. App. 542, 81 S. W. 67; Railway Co. v. Bingle, 91 Tex. 287, 42 S. W. 971; Hilje v. Hettich, 95 Tex. 321, 67 S. W. 90.

We think the testimony which we have quoted sufficient to take the case to the jury for their determination; for if there was testimony supporting the allegations of appellee in reference to the promise of appellant to repair the defective lights, and his reliance thereon, etc., it then became, under the cases just cited, a question to be determined by the jury.

[6] The third assignment of error complains of the refusal of the court to give special charge No. 3, requested by appellant, defining assumed risk, and under which it is asserted that the servant assumes the risk incident to his employment from dangers arising from defects that are obvious and patent. The court did so instruct the jury in the two special charges we have just discussed, and was not entitled to any further repetition of the issue. What we have said also applies to the refusal of the court to allow special charge No. 6, requested by appellant. It may also be said that both charges ignore the one issue upon which the court permitted the jury to find for appellee, the issue of defective lights.

[7] The fifth assignment of error complains of the refusal of the court below to instruct the jury, if appellee's injuries were the direct and proximate cause of appellee slipping, stumbling, or falling, caused by oil or other substance on the floor, and that in an attempt to catch himself he fell upon or put his hands upon or about the cogs and was injured, as claimed, to then find for the appellant. It is argued that if appellee did fall or slip as stated, the charge should have been given, because the slipping and falling, and not the defective lights, was the proximate cause of the injury. We do not think the pleading or the evidence warrants the charge. The evidence does not raise the issue that oil or other substance was upon the floor, and the requested charge to that extent would have been improper.

[8] Further, the charge was improper for the reason that appellee would have been entitled to recover if the jury believed that the injury would not have resulted but for the defective lights, even though some negligent act of appellee concurred with the negligence of appellee to produce the injury. In other words, the fact that appellee placed his hands upon the cogs, the dangers of which were open, patent, and obvious, and the risks of which he assumed, will not absolve appellant of liability if concurrently therewith the extinguishment of the light, under and by which he was performing his duties, placed him in sudden darkness contributing to the injury, and with the further qualification, which we have discussed at another place, that the lights went out as the result of appellant's failure to repair same. Railway Co. v. Elder, 44 Tex. Civ. App. 605, 99 S. W. 856; Railway Co. v. Fitzpatrick, 91 S. W. 355. The cases cited support the rule, and the Fitzpatrick Case, supra, cites many Texas cases upon the subject. As to whether the negligence of appellant did in fact concurrently contribute to appellee's injury was, of course, when properly submitted, a question of fact to be determined by the jury.

It is finally asserted that the verdict is excessive, and that the amount thereof indicates undue prejudice against appellant. The amount recovered was $3,000. Neither the amount of the verdict, nor the testimony upon which it was rendered, present such a case as authorizes us in the exercise of the circumscribed right we possess to disturb jury verdicts.

Finding no reversible error in the record, it becomes our duty to affirm the judgment of the trial court.