### DEAN et al. v. HINES et al.

No. 5027.

Court of Civil Appeals of Texas. Texarkana.

Dec. 17, 1936.

I. C. Underwood, Percy Woodard, and Paul W. Warren, all of Marshall, for appellants.

C. R. Newland, of Linden, Carney & Carney, of Atlanta, and A. G. Schluter, of Jefferson, for appellees.

HALL, Justice.

Four sets of claimants, namely, Ephram Dean and those associated with him, Lucinda Bell and those associated with her, John Williams and those associated with him, and Bob Hines and those associated with him, joined issue in the county court of Marion county to determine who were the heirs of James Deadman, deceased, entitled to his estate. Trial was had in the county court which resulted in a judgment for one-half of said estate to be divided between Ephram Dean and those claiming with him, and one-half of said estate to be divided between Bob Hines and those claiming with him. An appeal was perfected to the district court by Bob Hines and his associates. Trial in the district court was to the court without a jury,

which resulted in judgment for Hines and his associates, appellees, for the whole of said estate. Ephram Dean and his associates, appellants, have appealed to this court.

The record reflects that James Deadman was a single man and died intestate. His mother and father, Tom and Mariah Deadman, died many years ago, as did his brothers and sisters. He and all the appellants and appellees are negroes. H. A. Spellings was appointed by the county court as administrator of Deadman's estate, and after settling all claims against the estate there remained the sum of $2,-675.52 to be divided among the lawful heirs of James Deadman, deceased.

Appellants assert by several propositions that the evidence to the effect that the Mariah who married Tom Deadman was a Perkins was contrary to and not supported by the pleadings of appellees. This same contention is made by the appellants with respect to the findings of fact made and filed by the trial judge. The pertinent parts of said findings of fact are:

"The court further finds that the marriage of Tom Deadmon and Mariah Deadmon was during slavery. That Tom Deadmon died about one year after the close of the Civil War in 1866 and that James Deadmon, whose estate is herein being administered, was born about the first year after the close of the Civil War.

"That Mariah Deadmon before her marriage was a slave of one Grey Blackburn. That Tom Deadmon was also a slave of Grey Blackburn. That Grey Blackburn died some time before the Civil War and his widow married one Wiley Coor. That all the slaves of Grey Blackburn were known as and called Blackburn.

"That Mariah Dean was not the Mariah who married Tom Deadmon. That the woman who married Tom Deadmon named Mariah was formerly a slave of the Perkins family who lived on adjoining plantations to the Grey Blackburn plantation and that Mariah had been formerly called Mariah Perkins and was not called Mariah Blackburn until she had been purchased by Grey Blackburn, which was sometime before or at the time of marriage of Mariah and Tom Deadmon. The court further finds that slave marriages were not permitted between slaves on different plantations without their sale to the other plantation owner and that the sale of this woman Mariah by the Perkins plantation to the Blackburn plantation permitted her marriage to Tom Deadmon.

"That this Mariah, wife of Tom Deadmon, was not a 'Dean' in that the Mariah Dean, if such there was, was married at the Dean home, lived at the Dean home prior and subsequent to marriage for about seven years; that the Dean family lived on the Minter or Maberry plantation some 12 or 15 miles from Blackburn plantation, and wife of Tom Deadmon, the mother of James Deadmon, could not have been a 'Dean' because slave marriages were not permitted between slaves on different plantations."

Appellees in their amended petition allege "that the said Tom Deadman married Mariah Blackburn in Marion County, Texas. That the said Mariah Blackburn never had any brothers or sisters, and did not leave surviving her neither mother nor father." It will be noted that Mariah, the wife of Tom Deadman, was alleged as Mariah Blackburn. There was evidence in the record to the effect that Mariah and her two uncles were purchased by Grey Blackburn from Perkins before the Civil War, and that Mariah was known as Mariah Perkins. There was also testimony to the effect that Mariah assumed her new master's name of Blackburn. Certainly the evidence in this record is ample to show that the Mariah who married Tom Deadman was known both as Mariah Perkins and as Mariah Blackburn. It was the contention of appellants in this case that the Mariah who married Tom Deadman was, prior to her marriage, known as Mariah Dean, and there was evidence in the record to establish their contention. So, the controlling issue in this case was the true identity of Tom Deadman's wife, the mother of James Deadman, deceased, by whatever name she might have been known in the community where she lived before her marriage to Tom Deadman. And proof that she was known by either or both the names of Perkins or Blackburn was permissible under the allegation that she was Mariah Blackburn. Especially is this true where it is shown that both names refer to the same person. In the case of Niagara Fire Ins. Co. v. Lee (Tex.Sup.) 19 S.W. 1030, 1031, it was contended that the verdict of the jury and the judgment of the court rendered thereon was contrary to the law and the evidence for the reason that the suit was prosecuted by D. N. Lee and

Margaret R. Lee as plaintiffs, and the evidence conclusively showed that any cause of action which existed belonged to D. N. Lee and Rebecca Lee. The Supreme Court, through Chief Justice Stayton, answered this proposition by stating: "The propositions contained in this assignment are based on the fact that the person made a party plaintiff, as the widow and sole heir of T. H. Lee, under the name of Margaret R. Lee, was spoken of during the trial as 'Rebecca Lee.' Her testimony on the stand was as follows: 'I am one of the plaintiffs in this case. My name is Rebecca Lee. I live in Coleman county, Tex. I am the widow of·T. H. Lee. T. H. Lee is dead. He died on the 14th day of June, 1884. He left no children surviving him.' This evidence shows that Rebecca Lee and Margaret R. Lee are one and the same person. No inquiry was made as to her full Christian name. The person who states her name to be Rebecca Lee is the person who was a plaintiff in this cause. There were but two, and one of these was D. N. Lee, and the other Margaret R. Lee. The female plaintiff was the widow of T. H. Lee, and the person whose name is Rebecca Lee is shown to be his widow. The judgment is in favor of D. N. and Margaret R. Lee, and, if defendant had any doubt as to the identity of Margaret R. and Rebecca Lee, this, no doubt, could have been removed by a single question and answer. The court did not err in refusing the instruction, nor in refusing a new trial on the ground referred to in this assignment." See, also, Niagara Insurance Co. v. Lee, 73 Tex. 641, 11 S.W. 1024, for full statement of the case cited above. It was held in St. L. & S. F. Ry. v. White (Tex.Civ.App.) 160 S.W. 1128, 1129, which holding was later affirmed by the Supreme Court, 110 Tex. 585, 222 S.W. 963, that: "The general rule is that, in order to constitute a material variance between the allegata and probata, the variance must be in the nature and elements of the cause of action as distinguished from proof of circumstances, incidents, or causes which contributed to the alleged cause of action, but not particularized in the complaint." Also, 29 Cor.Jur. p. 808, § 1190. So the proof in this case that Tom Deadman's wife and James Deadman's mother was a Perkins before her marriage was proper under the allegations in appellees' petition to establish her true identity. If the rule were otherwise, the proof that James Deadman's mother was a brown-skinned woman rather stout in build would have been inadmissible to establish her identity. We are of the opinion that the trial court committed no error in admitting this testimony or in his findings of fact based upon same set out above.

■ Appellants make the further contention that the judgment of the lower court is clearly wrong—being without support of pleadings or evidence. With this contention we do not agree. We have carefully examined every word of the testimony in the record, and we find there is ample evidence to sustain the findings of fact and the judgment entered thereon by the trial court. The testimony in this case of necessity came from aged persons, mostly negroes who were born in slavery. Their rendition, in the evening of their lives, of facts and circumstances which occurred some sixty-five or seventy years ago, before, during, and immediately after the Civil War, would be attended with some discrepancies. It would be impossible for them to detail with absolute correctness testimony with respect to the facts in this case after the lapse of so many years. The eminent district judge who presided in this case was the trier of the facts. He saw these old witnesses in person, noted their demeanor as they strove to delve into the impressions of their childhood and gather together the testimony which makes up the record in this case. And we do not believe that his findings of fact and judgment based thereon should be disturbed. Niagara Fire Ins. Co. v. Lee, supra; Johnson v. Daniel, 25 Tex.Civ.App. 587, 63 S.W. 1032 (exact page 1033); Texas Employers' Ins. Ass'n v. Teel (Tex.Civ.App.) 40 S.W.(2d) 201; Universal Life & Accident Ins. Co. v. Nanes (Tex.Civ.App.) 92 S.W.(2d) 473.

All other assignments brought forward by appellants not specifically discussed herein have been examined and found without merit, and are overruled.

The judgment is affirmed.