## PRESLEY v. WILSON.

### No. 12556.

Court of Civil Appeals of Texas. Dallas. Jan. 28, 1939.

Rehearing Denied Feb. 18, 1939.

Nathaniel Jacks, of Dallas, for appellant.

Geo. Clifton Edwards, of Dallas, for appellee.

BOND, Chief Justice.

Appellee, as plaintiff in the court below, instituted this suit in a district court of Dallas County against appellant, as defendant, claiming actual and exemplary damages by reason of unlawful and malicious conduct of the defendant in exacting usurious interest and ·other unlawful charges for the use of money borrowed, and for the conversion of his automobile as the result thereof.

A trial was had to a jury, and, on findings that the defendant, prompted by malice toward the plaintiff, unlawfully converted plaintiff's automobile; that its reasonable cash market value at the time of the conversion was $170, and that $200 was fixed as exemplary damages, the trial court entered judgment in favor of plaintiff for the sum of $370, less the sum of $28.50 admittedly due and unpaid by plaintiff to defendant on the transaction involved in the suit.

The uncontradicted evidence shows that, on or about May 9, 1936, plaintiff (whose name is Abner O. Wilson), under the assumed name of B. F. Wilson (B. F. Wilson being the name of his father), borrowed from defendant, J. Earl Presley, the sum of $60, and, as evidence thereof, executed a note in the sum of $92, due and payable in installments of $3 per week, which, according to its terms, was to run for an average period of less than three months. To secure the payment of said note, plaintiff executed a chattel mortgage to the defendant on his automobile, signing his name thereto as "B. F. Wilson". The mortgage recited the usual terms and conditions incident to such instrument, especially important here, that in case default be made in the payment of said debt or interest, or any installment of said note, the whole amount remaining unpaid, shall at once become due and payable, and said mortgagee may, without notice, foreclose the mortgage by court action or otherwise, and, out of the proceeds of sale, pay the cost of foreclosing and the expense of pursuing, taking, keeping, advertising, and selling said goods and chattels. The evidence shows that, at the time plaintiff secured the loan and· executed the note and mortgage, he told defendant his true name —Abner O. Wilson—and gave reasons for the transaction to be conducted in name of B. F. Wilson instead of his own.

During the period of liquidation, plaintiff paid thirteen installments of the note, the defendant receipting him therefor, making out the receipts in the name of "B. F. Wilson"; and, at the time of the alleged conversion, plaintiff tendered payment of the balance due under the terms of the note and mortgage, which tender, defendant refused, resulting in the appropriation and sale of plaintiff's automobile. There is some testimony in the record that plaintiff was known by both names; if not generally, he was known, at least to defendant, as B. F. Wilson, whilst to others, as Abner O. or A. O. Wilson. Thus, for the purposes of the transaction involved here, plaintiff's

name may well be termed "B. F. Wilson", and in that name he chose to institute this suit, which provoked no objection or plea in abatement by the defendant.

However, be that as it may, it is uncontradicted that the plaintiff in suit is the identical person who suffered the damages complained of, arising out of a transaction which he had with the defendant, conducted in the name of B. F. Wilson. Plaintiff being in court under the name he assumed and, there being no question about his being the owner of the automobile, the party who borrowed the money, executed the note and mortgage, made the payments and received receipts therefor, and from whom the defendant exacted payments, relying on the mortgage he signed to effect the conversion, the misnomer, or assumed name which caused no hurt or prejudice to defendant, was an irregularity in pleadings, not material to this controversy. Plaintiff testified, "I didn't use the name only just making the loan and when I made the loan with Mr. Presley, I told Mr. Kirby (bookkeeper for Mr. Presley) my name and he says: 'That's alright', but he said, 'We will have to make the loan in the name the car papers are made in.'"

■ The rule as to names, in general, is stated in 19 Ruling Case Law, 1333, as follows: "It is merely a custom for persons to assume the name of their parents, but it is not obligatory nor punishable to adopt another name; hence it is generally held that a person may adopt any name in which to transact business, and may sue and be sued by such name. Since the object and purpose of describing a person by his name is to identify him, the general rule is that one may be designated in legal proceedings by the name by which he is commonly known, although not his true name. This rule does not require that he should be known by one name equally as well as by the other, but only that he be known by both. Again, a contract or obligation may be entered into by a person by any name he may choose to assume. All that the law looks to is the identity of the individual, and, when that is ascertained and clearly established, the act will be binding on him and on others."

■ Under the statutes of this state, the name of the plaintiff must be stated in the petition. R.S.1925, Art. 2003. However, this does not imply that a party may not contract and be contracted with, sue and be sued in an assumed name. The ob-

ject and purpose of the statute is to identify the plaintiff with the cause of action. Furthermore, if, forsooth, the name of the plaintiff be incorrectly stated in the petition, the defect cannot be reached by exception, but must be reached by plea in abatement. Tryon v. Butler, 9 Tex. 553; Tousey v. Butler, 9 Tex. 525. In the instant case, the defendant, with knowledge of the variance in the pleadings and proof, did not avail himself of that right, but in the midst of the trial, merely challenged plaintiff's right to sue in the name he chose to assume, by motion to dismiss. It is settled, we think, that a misnomer of a party to a suit must be pleaded in abatement and heard in limine, thus allowing the party affected an opportunity to amend, or the right to an exception is lost.

■ Variance in pleadings and proof becomes material only where it tends to mislead or surprise the adverse party. No such contention is made here. It is admitted that the party bringing the suit is the aggrieved party in the transaction out of which the suit arose, thus the misnomer, if, in fact, it be such, is immaterial. As a consequence, such irregularity could not have misled or surprised appellant; in fact, he knew the relationship of the plaintiff to the cause of action. In Brown Cracker & Candy Co. v. Johnson, Tex.Civ.App., 154 S.W. 684, 685, a variance in pleadings and proof were shown; the petition alleged one thing and the evidence showed another. This court said: "We do not think, however, that the variance between the pleading and the proof is a material variance. To have been material it must have tended to mislead and surprise appellant upon trial, and if it did not have that effect then the variance is immaterial. McClelland v. Smith, 3 Tex. 210; Brown v. Sullivan, 71 Tex. 470, 10 S.W. 288; St. Louis A. & T. Railway Co. v. Evans, 78 Tex. 369, 14 S.W. 798; First National Bank, etc. v. Stephenson, 82 Tex. 435, 18 S.W. 583; Houston Lighting & Power Co. v. Hooper, 46 Tex.Civ.App. 257, 102 S.W. 133."

■ In the case of Niagara Fire Ins. Co. v. Lee et al., Tex.Sup., 19 S.W. 1030, it was contended that the verdict of the jury and the judgment of the court rendered thereon were contrary to the law and the evidence, for the reason that the suit was prosecuted by D. N. Lee and Margaret R. Lee, as plaintiffs, and the evidence conclusively showed that any cause

of action which existed belonged to D. N. Lee and Rebecca Lee. The judgment was in favor of D. N. Lee and Margaret R. Lee, but the proof showed that the female plaintiff was in fact the person whose name was Rebecca Lee. The Supreme Court overruled the contention, saying that the court did not err in refusing the instruction, or in refusing a new trial, on the ground referred to in this assignment. See, also, Dean et al. v. Hines et al., Tex.Civ. App., 100 S.W.2d 194; Texas & N. O. R. Co. v. Haynes et al., 44 Tex.Civ.App. 272, 97 S.W. 849. So, we think, the plaintiff in suit in truth and fact being the one involved in the transaction with defendant and the party aggrieved by defendant's conduct in dispossessing him of his automobile, defendant is in no position to complain that the suit was brought in the name which plaintiff assumed to bear and which defendant acquiesced in—accepted the name in the transactions and acted thereon in converting plaintiff's property. Especially is this true where there is no evidence or suggestion in the record, that any other person than plaintiff is the aggrieved party, and no assignment is made attacking the judgment as not being supported by the record. Therefore, the jury having found that Presley was prompted by malice in the conversion of plaintiff's automobile, and that plaintiff being the identical party affected, the jury was authorized, not only to assess the actual damage he sustained, but to allow plaintiff exemplary damages for the reckless disregard for his rights, and the court to enter judgment according to the verdict. Appellant's assignment based on the variance is overruled.

By other assignments and propositions, appellant presents improper argument. As applicable to the assignments, it is shown that in the argument of counsel, no objection was made to the argument at the time and no admonitory instructions were given by the court not to consider same. Special consideration must be given here to the effect, if any, the discussion of plaintiff's attorney had on the verdict.

 It has been declared and repeatedly approved by the Supreme Court, that "the rule is now settled in this state that, where improper argument has been indulged in, the adverse complaining party is entitled to reversal of the judgment, as a matter of law, if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted". Texas Indemnity Ins. Co. v. McCurry, Tex.Com. App., 41 S.W.2d 215, 217, 78 A.L.R. 760; Bell et al. v. Blackwell, Tex.Com.App., 283 S.W. 765; Behringer v. South Plains Coaches, Inc., Tex.Com.App., 13 S.W.2d 334; Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S.W. 808; Floyd v. Fidelity Union Cas. Co., Tex.Com.App., 24 S.W.2d 363; Gulf, C. & S. F. Ry. Co. v. Ballew et al., Tex.Com.App., 66 S.W.2d 659; McClintic et al. v. J. D. Young Corp., Tex.Com.App., 66 S.W.2d 676. It will be observed that, in the case at bar, appellant does not attack the amount of the judgment as being excessive and not supported by pleadings and evidence. It was openly admitted that the record disclosed an unlawful conversion of plaintiff's automobile and warrants the findings of the jury.

 The argument of counsel pointed out in one assignment was: "Now, I want to go over these questions and I think that the answers to them are such that we will come to an agreement without much difficulty"; and, in connection therewith, pointed out what counsel thought the answers should be to the questions submitted. Then, another: "Now, gentlemen, malice doesn't mean personal spite—that he just wanted to do something to Mr. Wilson because he did not like Mr. Wilson—you will notice it says 'ill will or bad or evil motive'. Now the evil motive is the evil motive that this man has to take from Mr. Wilson his property which he had no honest, lawful title to. I think there is no question but that Mr. Presley knowingly and deliberately and willingly and with intent to take this man's property, which is the evil motive in reckless disregard of the rights of another". Then another: "As I said before, this man isn't a smart and adroit and slick and unscrupulous man like this man Presley, in my judgment. He would not be going up there and borrowing $60.00 at the rate of 150% and nobody does that except people who are in some sort of distress or just plain ignorant". Then, still another: "I don't think that this man is a skilful or a slick person in any respect. He is just an ordinary simple-minded person who works in a candy factory, but, this man Presley is not only one of the most adroit persons in the usury business, but in this case he has exhibited before you—he has been exhibited before you without question an absolute deliberate considered falsifier. When he said that—and he has been in the loan

business for 9 or 10 years—you know that that wasn't true, and his statement or that untruth wasn't any accident, wasn't any oversight. It was just a deliberate statement because he knew that if he had admitted what all of you know is true anyhow, that every reasonable man knows, that that charge of 150 per cent is unlawful, and he knew it from his long experience, and when he said he did not know it, he was not telling the truth." There were many other excerpts of similar import taken from the argument of plaintiff's counsel, which were assigned as error, and which may be regarded as presenting a like single question of improper argument.

■■■ Considering the record, we think the argument not improper. It dealt with facts and circumstances, and was a reasonable deduction from disclosures in the record. The valuable right of counsel to argue his case should not be restricted as to deprive him of the right to state fully his version of the testimony and make proper application thereof to answer special issues. In asking the jury to answer the submitted issues in line with his version of the testimony is not invading the province of a jury verdict, that is, to effect answers to bring about a judgment favorable to his contention. There were testimony and circumstances in this case that amply justified counsel for plaintiff in drawing the conclusion that the defendant was a shrewd and adroit business man, and did not tell the truth while a witness in his own behalf. Mr. Presley was shown to have followed the business of loaning money, involved in many commercial transactions, and handled much commercial paper for many years; evidently a successful business man, and knew the ordinary business affairs. He testified:

"Q. You took a note for $92.00, didn't you? A. Yes.

"Q. And you loaned the man $60.00? A. $67.50.

"Q. That left $24.50, you had there as interest for carrying this loan? A. Yes.

"Q. You have been in this business for nine or ten years? A. Yes.

"Q. You know what the usury law in Texas is, don't you? A. I have a pretty good idea of it, yes.

"Q. You knew you were proposing to charge usury on that man's loan, didn't you? A. Well, we don't call it charging usury, because we have hazards and our collection expense and overhead expense.

"Q. Then $24.50 was what you charged for making a loan of $60.00 to him? A. Yes.

"Q. You knew it was an unlawful charge? A. No.

"Q. Did you think that was a lawful charge? A. Yes."

■■■ We are of the opinion that we would be unauthorized to reverse the judgment of the lower court on account of argument of counsel in stating that "this man Presley is not only one of the most adroit persons in the usury business; but, in this case, he has been exhibited before you without question an absolute deliberate considered falsifier." We concede that abuse of witnesses is not argument, and should never be indulged in to prejudice or inflame the minds of jurors. But, where, as here, the weight and credibility of the testimony bears on the issue of exemplary damages, argument attacking the credibility of the witness and the weight to be given his testimony is justified. The argument of counsel that Presley did not tell the truth in his testimony, obviously a conclusion of his own, presents no error.

We have carefully considered all assignments of error presented, and, finding no reversible error, the judgment of the court below is affirmed.

Affirmed.

### On Rehearing.

Appellant challenges, among other things, our statement that "appellant does not attack the judgment as being excessive and not supported by pleadings and evidence", and cites us to his assignments of error 8, 9, 47 and 48, and directs us to read, as though we had not already done so, pages 7 through 12 of appellant's brief. We revert to the assignments and pages referred to and still fail to see where appellant attacks the amount of judgment as being excessive, and not supported by pleadings and evidence. The assignments referred to make no mention of the excessiveness of the judgment rendered on findings of the jury, but deal exclusively with the misnomer, or assumed name, employed by the plaintiff in bringing the suit. We think this is far afield from attacking the amount of the recovery as not finding support in pleadings and evidence.

The statement complained of was directed to the issue that no prejudice resulted from improper argument of appellee's counsel, essential for reversal of the case. The statement was not intended to imply that appellant did not attack the judgment because of the misnomer, and other matters complained of; it clearly shows the purpose, but, to make our position clear, we reconstruct the expression to read "appellant does not attack the amount of the judgment as being excessive and not supported by pleadings and evidence". This reflects the record.

Appellant's motion for rehearing is overruled.