John B. COFFEE, et al, Appellants,

v.

CITY OF ALVIN, Appellee.

No. C2885.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 5, 1982.

Sam Dawkins, Jr., Eastham & Meyer, Houston, for appellants.

Jerry Shiever, Perdue, Brandon, Blair Shiever & Fielder, Austin, for appellee.

Before MILLER, MORSE and JAMES, JJ.

MORSE, Justice.

This appeal arose from a property tax dispute. Appellant John Coffee filed suit against appellees, the City of Alvin, Alvin Community College, and Alvin Independent School District, seeking an injunction to prohibit the collection of ad valorem taxes assessed. Appellant alleged that in 1977 the valuation of his property was increased in amounts ranging from 140% to 500% and that such values were discriminatory and grossly excessive. Shortly thereafter, appellees brought a separate suit for the collection of the delinquent taxes due on ap-

pellant's property. Upon appellant's motion, the two cases were consolidated.

Upon trial of the case, fourteen special issues were submitted to the jury in the Court's charge. In answer to special issues number 3 thru 8 the jury found the fair market value of the land in question as of January 1, 1978. In special issues numbers 9 thru 14 the jury valued the same land as of January 1, 1979. The following table compares the fair market values found by the jury to those used by appellees in making the tax assessment.

TABLE OF LAND VALUES

| Tract (acres) | Fair Market Value by Tax Assessor | Fair Market Value Found by Jury | % of Fair Market Value by Jury of Assessed FMV |
|---|---|---|---|
| 308.04 | $369,000 | $246,432 | 67% |
| 300 | 360,000 | 240,000 | 67% |
| 30 | 54,000 | 33,000 | 61% |
| 81.23 | 121,860 | 97,476 | 80% |
| 51.11 | 76,673 | 661,332 | 80% |
| 20 | 81,040 | 81,040 | 100% |

Thereafter, appellant filed a motion for the trial court to enter a judgment based upon the fair market value of the property as found by the jury. A motion was also filed by the Alvin Consolidated Tax Office which requested that the trial court disregard the jury's findings as to special issues numbers 3 thru 14. The trial court granted the motion of the Alvin Consolidated Tax Office and entered a judgment for appellees and disregarded the jury's findings as to said special issues.

■ In a case such as this, where the property owner is attacking the valuations as excessive, evidence is presented as to the fair market value of the property for the purpose of determining whether the property has been grossly overvalued. *Westwood Independent School District v. Southern Clay Products, Inc.,* 604 S.W.2d 511 (Tex. Civ.App.—Tyler 1980, writ ref'd n.r.e.); *Pierce v. City of Jacksonville,* 403 S.W.2d 512 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.). A grossly excessive valuation may be sufficient, as a matter of law, to establish such fraud or illegality as to render the valuation void. *State v. Whittenburg,* 153 Tex. 205, 265 S.W.2d 569 (1954). However, before a valuation can be said to be grossly

excessive, the assessed value must be so far above the property's fair market value as to "shock a correct mind and thereby raise a presumption that the valuation was fraudulent or does not represent a fair and conscientious effort on the part of the board to arrive at the fair cash market value." *Westwood Independent School District v. Southern Clay Products, supra; Pierce v. City of Jacksonville, supra.*

■ In his first and second points of error, appellant contends that the trial court (1) erred in failing to enter judgment upon his motion and (2) erred in granting the motion filed by Alvin Consolidated Tax Office to disregard the jury's findings as to special issues numbers 3–14. Appellant argues that his testimony provided sufficient evidence of probative value to support the jury's findings as to the fair market value of his land. To support this contention, appellant points out the following testimony:

[Q] What, in your opinion, Mr. Coffee, is a fair market value per useable acre of the land?

[A] For agricultural purposes?

[Q] Yes, sir.

[A] In this range where crops are, soybeans and rice, varies of course, bit (sic) would say from $300.00 to $400, maybe $500.00 per acre.

[Q] In your opinion, would the land be suitable for, I guess you might say, commercial development?

[A] I think it would be a sad mistake.

[Q] Why is that?

[A] Because of the—primarily, because its (sic) flood prone and does flood. And it's cut up by easements and pipelines. And I just—I think the only use for the land should be for what you can do with it agriculturally.

[Q] In other words, its (sic) your opinion that the agricultural use of the land is the best use in view of its easements and flood prone and so on?

[A] Yes.

However, when Mr. Coffee was later re-called to the witness stand for cross examination, he further testified:

[Q] Now then, you have testified that, in your opinion, your property is worth from $300.00 to $500.00 an acre. Tell me that that's what you would sell it for?

[A] I testified that that was present use value of it.

[Q] Is that what—you have heard testimony with being that amount from a willing seller to a willing buyer. That's the amount that the tax office must place on that value. Do you think $300.00 to $500.00 an acre is the fair market value with that definition.

[A] I haven't had any offers to purchase my land, *so I don't know what the value would be.* [emphasis added].

When asked to substantiate his $300 and $500 figures, Mr. Coffee responded:

[A] If you haven't had any offers to sell the land, how do you come up with the figure of $300.00 to $500.00? It has to be a hypothetical situation.

[A] Then it's hypothetical.

[Q] What about the hypothetical situation of: What do you think would be top dollar? Is that it?

[A] If it's not for sale, is doesn't have a top dollar price.

[Q] If it's not for sale, it doesn't have any price, by your definition. I'm trying to get at where you got this figure of $300.00 to $500.00. We've talked about where the tax office gets their figures. Where do you get your figures?

[A] This is the price that has been placed in the area on agricultural land; for agricultural use; the values that have been placed.

[Q] By willing buyers and willing sellers?

[A] By transactions that involve land.

[Q] You know of property in the area close to your's that sells for only $300.00 to $500.00 an acre?

[A] No.

[Q] Again, what do you base—

[A] I don't know of any land that's sold in my area.

[Q] Then what did you base this on if you can't base it on sales because you don't know of any sales? What did you base this figure on?

[A] This is the custom of the area for rice land and soybean land to have a value from $300.00 to $500.00 an acre for that use.

[Q] Whose custom and for what purpose?

[A] For that use. For the use of growing rice or soybeans.

[Q] Whose custom? Custom of the tax office?

[A] Definitely not their's.

[Q] Right. Whose custom?

[A] Whoever is buying or selling land, I would assume. I'm not buying or selling land.

[Q] You are assuming that land buys and sells out there for $300.00 to $500.00 an acre?

[A] No.

[Q] Okay. I still don't see how you have substantiated what you are saying. I don't understand where you got these figures. You say by, "custom" but it's not a custom based on the tax office evaluation. Their people ought to know.

[A] It's a rule of thumb that after land reaches a certain price you can't afford to farm it to rice or soybeans and these are the prices I quoted. Maybe I pulled them out of the air and maybe I can't substantiate them. I testified to that; I reiterate that; and I'm not going to elaborate on it.

When appellees introduced evidence showing that taxes were due, delinquent and unpaid, a prima facie case for the validity of the assessed valuations and the collection of such taxes was made. *Alamo Barge*

*Lines, Inc. v. City of Houston,* 453 S.W.2d 132 (Tex.1970); *Campbell v. City of Houston,* 464 S.W.2d 372 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ). "Once this initial burden is met by the plaintiff in a tax suit, as was done by the appellees here, the burden of going forward with evidence shifted to the defendant taxpayer. Thereafter, in order to prevail, the taxpayer must introduce competent evidence permitted by law to invalidate the assessments." *City of Corpus Christi v. Davis,* 575 S.W.2d 46 (Tex. Civ.App.—Corpus Christi 1978, no writ); *See Alamo Barge Lines, Inc. v. City of Houston, supra.*

■ The question before this court is whether there is evidence of probative force in the record which supports the jury's findings in special issues numbers 3–14 as to the fair market value of the properties. In *Harbin v. Seale,* 461 S.W.2d 591 (Tex.1970), the Texas Supreme Court wrote:

> The law is clear in this state that before a trial court can render a judgment non obstante veredicto, based on the absence of evidence, it must determine that there is no evidence having probative force upon which the jury could have made the findings relied upon. *Whiteman v. Harris,* 123 S.W.2d 699 (Tex.Civ. App.—Fort Worth 1938, writ ref'd). In making this determination, all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor.

Normally an owner of property, who states that he knows the value of the article in question, can give his opinion as to the property's value. The expertise and qualifications of the witness are merely factors to be considered in weighing the testimony. *Dillon v. Troublefield,* 601 S.W.2d 141 (Tex. Civ.App.—Austin 1980, no writ); *Southwestern Public Service Co. v. Vanderburg,* 581 S.W.2d 239 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). However, where the

owner affirmatively demonstrates "that his opinion is cast in terms of approximation and estimate unsupported by any relevant facts leading to or supporting such approximation or estimate the opinion testimony is too conjectural." *Stinson v. Cravens, Dargan & Co.,* 579 S.W.2d 298 (Tex.Civ.App.— Dallas 1979, no writ); *Ada Oil Co. v. Logan,* 447 S.W.2d 205 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ).

■ It is clear from Mr. Coffee's testimony that he was not aware of the actual market value of his land or of any comparable sales, but was only familiar with the land's value "placed" for *agricultural use.* Although Mr. Coffee testified that in his opinion agricultural use is the best use of the land, there was no showing in the record as to Mr. Coffee's qualifications to make such a determination. He himself characterized his dollar figures as "hypothetical" and "as a rule of thumb" which maybe he "pulled out of the air" and can't substantiate same. The record clearly reflects that Mr. Coffee's opinion testimony as to the fair market value of his land was "cast in terms of approximation and estimate unsupported by any relevant facts" and is of no probative value.

■ The jury's findings of dollar values in answer to special issues numbers 3–14 cannot be supported by the testimony as to the detrimental effects on value of the various encumbrances upon the land. Although a jury is not bound by the opinion evidence of experts and can form its own opinion from other evidence and by utilizing its own experience and common knowledge, a jury must have some basis for its decision. Where the jury's findings of fair market values are below those given by any expert witnesses, and the jury has other evidence before it from which a lower fair market value can be calculated, it's verdict can be upheld, as in *Community Public Service Co. v. Andrews,* 590 S.W.2d 563 (Tex.Civ.App.— Houston [1st Dist.] 1979, writ ref'd n.r.e.). However, the evidence before this jury as to the encumbrances upon the land, failed

to supply the jury with any information sufficient for calculation of the dollar effect of such encumbrances.

Having found no probative evidence to support the jury's findings as to special issues numbers 3–14, we hold that the trial court did not err in disregarding the jury's findings on said special issues when entering judgment. Appellant's first and second points of error are overruled.

■ Appellant's third point of error contends that there was "no evidence" to support the award of attorney fees to appellee. Appellant has not attacked the reasonableness of the award. In considering a no evidence point of error, this court is to consider only the evidence and inferences tending to support the findings and conclusions of the finder of fact at the trial level and is to disregard all evidence and inferences to the contrary. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981). "If the evidence is so weak as to do no more than create a mere surmise or suspicion of the existence of the vital facts, then the trial court's judgment must be reversed. Otherwise, sufficient evidence exists, and the trial court's judgment must be affirmed." *Bormaster v. Henderson,* 624 S.W.2d 655 (Tex.App.—Houston [14th Dist.] 1981, no writ).

The jury, in answer to special issue number two, found reasonable attorney fees to be 11% of the total taxes, penalties and interest due. A review of the record reveals that Mr. Jones, the tax assessor collector for the Alvin Consolidated School District, testified that appellee's law firm had been retained to represent the City of Alvin and the Alvin Independent School District and that appellee's fee was to be 15% of all the sums collected in the lawsuit. Mr. Jones also testified that he had been working in the "ad valorem tax field" for 25 years and that every property tax attorney he has ever dealt with charged the same 15% fee. This evidence, although meager, gave the jury some facts upon which to base their finding. The 11% figure arrived upon by the jury was below the 15% figure testified to by Mr. Jones and appellant has not attacked the 11% fee as being excessive. The case *Knopf v. Standard Fixtures Co., Inc.,* 581 S.W.2d 504 (Tex.Civ.App.—Dallas 1979, no writ), relied on by both appellant and appellee, is not controlling in the case presently before us. In *Knopf,* the appellant attacked the attorney's fees as being excessive, while here the appellant is contending that the evidence is legally insufficient to support *any* award of attorney's fees. Appellant's third point of error is overruled.

■ In his fourth point of error, appellant contends that the trial court erred in granting Alvin Consolidated Tax Office's motion to disregard the jury's findings on special issues numbers 3–14 because Alvin Consolidated Tax Office was not a party to the lawsuit. The record reflects that the motion in question which was filed by appellee's attorney incorrectly stated, "[n]ow comes the Alvin Consolidated Tax Office, Plaintiff in the above numbered and entitled cause . . . ." Although Alvin Consolidated Tax Office was not the name of the plaintiff in this case, we feel that this inadvertent misnomer did not mislead appellants as to who was actually asserting the motion. We find that the trial court did not err. *See Presley v. Wilson,* 125 S.W.2d 654 (Tex.Civ.App.—Dallas 1939, writ dism'd judgmt cor.). Appellant's fourth point of error is overruled and the judgment of the trial court is affirmed.