In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00093-CV
______________________________


KW CONSTRUCTION, Appellant
 
V.
 
STEPHENS & SONS CONCRETE CONTRACTORS, INC., Appellee


                                              

On Appeal from the 62nd Judicial District Court
Lamar County, Texas
Trial Court No. 69,658


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            KW Construction appeals the judgment entered following a bench trial in which plaintiff,
Stephens & Sons Concrete Contractors, Inc., recovered $12,500.00, plus pre- and post-judgment
interest and $7,500.00 in attorney's fees in its suit for breach of an oral contract or, in the alternative,
under a theory of quantum meruit. Stephens & Sons alleged there existed an oral contract between
the parties in which the parties agreed that Stephens & Sons would repair and construct certain
concrete structures under a general contract awarded to KW Construction by the Sabine River
Authority (SRA) to construct an office complex in Rains County. After a payment dispute went
unresolved, Stephens & Sons brought suit in Lamar County. KW Construction unsuccessfully
moved the trial court to transfer the case to Rains County. On appeal, KW Construction complains
of the trial court's refusal to transfer the case. KW Construction also contends there is legally and
factually insufficient evidence to support both the conclusion that an oral contract was formed
between the parties and the trial court's finding of $12,500.00 as the reasonable value of work
performed. We will affirm. 
I.         FACTUAL AND PROCEDURAL HISTORY
            KW Construction is a sole proprietorship owned by Kenneth Brown, with its primary place
of business in Rains County. KW Construction was awarded the general contract for the SRA to
build an office complex in Rains County. The original concrete subcontractor left the job before
completion of the concrete work. The work that had been completed to that point was unacceptable
because it was not level. 
            In 1999, Brown contacted Todd Stephens of Stephens & Sons Concrete Contractors, Inc. to
discuss the task of repairing and completing the concrete work. Brothers Todd and Paul Stephens



traveled from the company's office in Lamar County to meet with Brown and Steve Hunt and to
assess the project at the job site in Rains County. After the site inspection, the men met at Brown's
house in Rains County to further discuss the project. 
            Initially, Stephens and Brown agreed that Stephens & Sons would "cap" the defective slab,
if the SRA approved the procedure, and complete the remaining concrete work. The "capping"
process would have taken approximately two to three days to complete. According to Stephens'
testimony, he and Brown agreed that the price associated with the "capping" process would not
exceed $18,000.00, the amount representing the remainder of the amount KW Construction had
budgeted for construction work on the SRA project. A few days later, Brown called Stephens at his
office in Lamar County to inform him that the SRA had rejected the "capping" process as a repair. 
During this telephone conversation, the two agreed instead that Stephens & Sons would grind and
level the existing 5,568 square feet of defective concrete slab, a more difficult and more expensive
process than "capping." In addition, Stephens & Sons was to pour approximately 200 square feet
of structural slab; pour 2,352 square feet of sidewalk, mechanical pad, and porch; and pour 916
linear feet of curb and gutter.
            A dispute concerning payment arose and, eventually, Stephens & Sons left the job incomplete
for nonpayment, having substantially completed the grinding and leveling of the defective concrete
slab and having poured approximately 100 linear feet of curb and gutter, 215 square feet of porch,
and 200 square feet of structural slab. The payment dispute continued and resulted in litigation. 
Stephens & Sons brought suit in Lamar County against KW Construction to recover funds owed to
Stephens & Sons under an oral contract or, alternatively, under a theory of quantum meruit. KW
Construction unsuccessfully moved the trial court to transfer the case to Rains County. 
II.       VENUE
A.        Permissive Venue and Review of Ruling on Motion To Transfer Venue
            First, we note that a substantial part of the events or omissions giving rise to a claim may
occur in more than one county. See S. County Mut. Ins. Co. v. Ochoa, 19 S.W.3d 452, 458 (Tex.
App.—Corpus Christi 2000, no pet.). Plaintiffs are accorded the right to choose venue first as long
as suit is initially filed in a county of proper venue. Wilson v. Tex. Parks & Wildlife Dep't, 886
S.W.2d 259, 261 (Tex. 1994). When the county in which the plaintiff files suit is at least a
permissive venue and when no mandatory provision applies, the plaintiff's venue choice cannot be
disturbed. See id.; Chiriboga v. State Farm Mut. Auto. Ins. Co., 96 S.W.3d 673, 677 (Tex.
App.—Austin 2003, no pet.). If the parties' dispute involves two counties of permissive venue,
transferring the case is improper. Wilson, 886 S.W.2d at 262.
            Once the plaintiff's choice of venue is challenged, the plaintiff has the burden to present
prima facie proof that venue is maintainable in the county of suit. Tex. R. Civ. P. 87(2)(a), (3)(a);
In re Masonite Corp., 997 S.W.2d 194, 197 (Tex. 1999). The plaintiff's prima facie proof is not
subject to rebuttal, cross-examination, impeachment, or disproof. Ruiz v. Conoco, Inc., 868 S.W.2d
752, 757 (Tex. 1993); Chiriboga, 96 S.W.3d at 678. When ruling on a motion to transfer venue, the
trial court must assume the pleadings are true and decide based on the pleadings and affidavits
submitted by the parties. Tex. R. Civ. P. 87; Chiriboga, 96 S.W.3d at 678. Venue questions are to
be decided based on the "facts existing at the time the cause of action that is the basis of the suit
accrued." Tex. Civ. Prac. & Rem. Code Ann. § 15.006 (Vernon 2002). The action must remain
in the county of suit if the plaintiff selected a county of proper venue and supported the selection
with prima facie proof supporting venue in that county. Wilson, 886 S.W.2d at 261.
            In such cases involving disputes over permissive venue, we review the entire record for any
probative evidence that venue was proper in the original county of suit. Wilson, 886 S.W.2d at 262;
Chiriboga, 96 S.W.3d at 677. In reviewing a venue decision, we must conduct an independent
review of the entire record, including, where applicable, the trial on the merits, to determine whether
any probative evidence supports the trial court's venue decision. Tex. Civ. Prac. & Rem. Code
Ann. § 15.064(b) (Vernon 2002). We review the record in the light most favorable to the venue
ruling; however, we give no deference to the trial court's application of the law. Id. If there is any
probative evidence supporting venue in the county where judgment was rendered, we must affirm
the trial court's ruling. Bonham State Bank v. Beadle, 907 S.W.2d 465, 471 (Tex. 1995); Chiriboga,
96 S.W.3d at 677–78. If no such evidence exists, we must reverse the case. See Tex. Civ. Prac.
& Rem. Code Ann. § 15.064(b); Ruiz, 868 S.W.2d at 758; Chiriboga, 96 S.W.3d at 678.
            An appellate court cannot review the sufficiency of the evidence supporting the plaintiff's
venue choice. Ruiz, 868 S.W.2d at 758. If the record contains any probative evidence supporting
venue in the county of suit, a transfer is improper even if the evidence preponderates to the contrary. 
Wilson, 886 S.W.2d at 262. However, conclusive evidence to the contrary can destroy the "probative
evidence."


 See Ruiz, 868 S.W.2d at 757; Chiriboga, 96 S.W.3d at 678.
            In this case, no mandatory venue provision applies.


 Therefore, venue here is governed by
the general venue rule contained in Section 15.002(a):
(a) Except as otherwise provided by this subchapter or Subchapter B or C, all
lawsuits shall be brought:
 
(1) in the county in which all or a substantial part of the events or
omissions giving rise to the claim occurred;
 
(2) in the county of defendant's residence at the time the cause of
action accrued if defendant is a natural person;
(3) in the county of the defendant's principal office in this state, if the
defendant is not a natural person; or
 
(4) if Subdivisions (1), (2), and (3) do not apply, in the county in
which the plaintiff resided at the time of the accrual of the cause of action.
Tex. Civ. Prac. & Rem. Code Ann. § 15.002 (Vernon 2002). The language pertinent to the venue
issue before us is found in Section 15.002(a)(1), which provides that venue is proper in the county
where "all or a substantial part of the events or omissions giving rise to the claim occurred." Tex.
Civ. Prac. & Rem. Code Ann. § 15.002(a)(1). We must determine whether the record contains any
probative evidence to support the trial court's implied ruling that "all or a substantial part of" the
events giving rise to this suit occurred in Lamar County.
B.        Venue Facts
            KW Construction maintains its place of business in Rains County; Stephens & Sons
maintains its place of business in Lamar County. The record is clear that Brown first contacted
Stephens & Sons by placing a telephone call to Stephens in Lamar County. After the initial
telephone conversation, the Stephens brothers traveled to Rains County to assess the project. Brown
then again called Stephens' office in Lamar County. The parties disagree as to whether they agreed
to a price during this telephone conversation and, if so, on what price they agreed. But it is
undisputed that, during this telephone call, the men came to an agreement as to the scope of the work
to be done, since Brown informed Stephens that the SRA rejected the "capping" proposal. Instead,
the two men agreed during this conversation that Stephens & Sons would grind and level the
defective slab. 
            Subsequently, all the concrete work was performed in Rains County. By affidavit, Stephens
stated it was agreed that payment was to be sent to Stephens & Sons in Lamar County. Brown sent
to the Stephens & Sons office in Lamar County a check in the amount of $4,717.00 bearing the
notation "paid in full." Stephens returned the check. The trial court concluded that the parties agreed
that payment would be made in Lamar County. 
C.        Former Venue Provision: Accrual of a Cause of Action
            Before 1995, the relevant venue provision did not contain a substantiality requirement and,
instead, pointed to "the county in which all or part of the cause of action accrued." See Krchnak v.
Fulton, 759 S.W.2d 524, 525 (Tex. App.—Amarillo 1988, writ denied). A "cause of action" consists
of a plaintiff's primary right and the defendant's act or omission which violates that right. Id. at 526. 
A "cause of action" comprises every fact which is necessary for a plaintiff to prove in order to obtain
judgment. Id. The accrual of a cause of action means the right to institute and maintain a suit, and
whenever one person may sue another, a cause of action has accrued. Id. The court in Krchnak
noted that, as early as 1854, the Texas Supreme Court held that, in a suit for breach of contract, the
contract, its performance, and its breach were all essential parts of the cause of action. Phillio v.
Blythe, 12 Tex. 124, 127–28 (1854); Krchnak, 759 S.W.2d at 526. 
            To illustrate, we look to a case that, although decided under the "all or part" language of the
pre-1995 venue provisions, is factually analogous to the case before us. In Krchnak, plaintiff Fulton
and defendant Krchnak entered into an oral agreement that Fulton would board Krchnak's mare. The
mare was to be boarded and services rendered in Lee County. Krchnak, 759 S.W.2d at 526. The
defendant was a resident of Austin County. Id. After Krchnak's failure to pay for Fulton's services,
Fulton brought suit in Lubbock County, alleging that the agreement was entered into in Lubbock
County and that the agreement provided that payment was to be made in Lubbock County. Id.
            The essential elements, then, of Fulton's cause of action were that an agreement existed under
which services were rendered by appellee for which payment was not made by appellant. Id. The
court went on to conclude that "[a] part of that underlying contract would be an agreement that
payment would be made in Lubbock County." Id. Venue was proper in Lubbock County because
the Fulton's prima facie proof showed that the agreement to pay for his services was entered into in
Lubbock County and that the contract provided for payment to be made in Lubbock County. Id. 
Again, under the former general rule, the court held that the ''cause of action accrued'' in Lubbock
County. Id.; see also Whitworth v. Kuhn, 734 S.W.2d 108, 111 (Tex. App.—Austin 1987, no writ)
(cause of action for breach of lease accrued in county where rental payments to be made, although
leased premises were in different county). 
            Both parties rely to an extent on the opinion in Krchnak. KW Construction distinguishes the
rule in Krchnak to support its argument that the place to which KW Construction sent partial
payment is not an element of Stephens & Sons' cause of action. Going further, KW Construction
points out that no longer is any fact connected to the lawsuit sufficient to establish venue as it was
under the venue scheme prior to the 1995 amendments. See Chiriboga, 96 S.W.3d at 681. Stephens
& Sons relies on the rule in Krchnak for the proposition that, if payment under a contract is to be
made in a certain county but a party fails to make payment, a cause of action for breach of contract
accrues in the county in which payment was to be received. See Krchnak, 759 S.W.2d at 526. 
Stephens & Sons argue that, according to Krchnak, the telephone discussions in which Brown first
contacted Stephens & Sons and in which the two came to an agreement regarding the scope of the
work to be done and Brown's later failure to pay Stephens & Sons in accordance with the terms of
the agreement constitute a substantial part of the events giving rise to the breach of contract claim.
            From Krchnak, we know that a part of a cause of action accrues in the county in which the
agreement was made and payment was to be made. Now we must measure those events in terms of
Section 15.002's substantiality requirement. In other words, we must determine whether those events
constitute a substantial part of the plaintiff's claim.
            A more recent case, one decided under the amended venue provision, lends us guidance in
this inquiry. See Kay v. N. Tex. Rod & Custom, 109 S.W.3d 924, 926 (Tex. App.—Dallas 2003, no
pet.). Kay sued North Texas Rod & Custom in Dallas County for breach of contract. Id. at 925. 
North Texas Rod & Custom successfully moved the trial court to transfer the case to Kaufman
County, the county in which North Texas Rod & Custom's place of business was located. Id. at 926. 
The trial court concluded no fact supported Kay's choice of venue. See id. After reviewing the
record, the Dallas Court of Appeals agreed, concluding that no evidence in the record supported
Kay's allegation that North Texas Rod & Custom solicited Kay's business by placing a telephone call
to Kay's place of business in Dallas County. Id. That being the case, the trial court's order
transferring the case to Kaufman County was proper. Id. The implied holding of Kay is that, had
there been evidence to support Kay's allegation that North Texas Rod & Custom did contact him by
placing a telephone call to Dallas County, such evidence would have been sufficient to support venue
in Dallas County, even under the more rigorous standard in the post-1995 general venue scheme.


 
See id.
D.        Venue Proper in Lamar County
            Applying reasoning similar to that in Krchnak to the converse factual situation as that
presented in Kay, we hold that the record before us contains probative evidence to support the trial
court's implied ruling that "all or a substantial part of" the events giving rise to this suit occurred in
Lamar County. KW Construction first contacted Stephens & Sons in Lamar County in November
2000 to seek its services. Later, Brown again called Stephens in Lamar County to clarify the scope
of work to be done. According to Stephens' testimony, during this conversation, the parties also
agreed that the price would be determined on a "time and materials" basis. Further, Stephens stated
by affidavit that payment was to be made by Brown to Stephens in Lamar County. The fact that
Brown sent a later-rejected $4,717.00 check to Stephens in Lamar County as an attempted payment
in full supports the conclusion that payment was to be made to Stephens & Sons in Lamar County.
            The elements of a breach of contract claim are (1) existence of a valid contract,
(2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant,
and (4) damages to the plaintiff resulting from the breach. Id. at 927. So, in terms of the venue
provision and Stephens' claim for breach of contract, the evidence here connects at least two
elements—the existence of a contract and the defendant's breach—to Lamar County. We conclude
events or omissions pertaining to two elements of Stephens & Sons' breach of contract claim are
sufficient to qualify as a "substantial part" of the plaintiff's claim and sufficiently connect the claim
to Lamar County. We hold that these facts constitute probative evidence supporting venue in Lamar
County. We, therefore, must not disturb the trial court's denial of Brown's motion to transfer venue.
III.      SUFFICIENCY OF THE EVIDENCE TO SUPPORT FINDING OF A CONTRACT
            The trial court found that there was an agreement formed between KW Construction and
Stephens & Sons. After hearing conflicting evidence as to whether the parties agreed on an amount
to be paid for the work done, the trial court also arrived at a figure: 
2.Stephens & Sons performed good and valuable work on the Project
for KW. The reasonable value of that work performed was $12,500.00.

Brown complains there is legally and factually insufficient evidence to support the trial court's
findings. 
A.        Standards of Review
            Findings of fact entered in a case tried to the court are of the same force and dignity as a
jury's answers to jury questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the
evidence to support them by the same standards that are applied in reviewing the legal or factual
sufficiency of the evidence supporting a jury's answer to a jury question. Id.
            In reviewing the legal sufficiency of the evidence, we must consider only the evidence and
inferences that tend to support the finding and disregard all evidence and inferences to the contrary. 
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). Anything more than a scintilla of evidence
is legally sufficient to support the finding. Id. When reviewing the factual sufficiency of the
evidence, we must consider and weigh all the evidence. Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989). We must uphold the finding unless we conclude the finding is so
against the great weight and preponderance of the evidence as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
B.        Elements of an Enforceable Contract
            Parties form a binding contract when the following elements are present: (1) an offer, (2) an
acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each
party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be
mutual and binding. Buxani v. Nussbaum, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997,
no writ). Brown challenges the evidence to support three of the elements: offer, acceptance, and
mutual assent.
                        1.         Sufficient Evidence of Valid Offer
            Brown contends the evidence is insufficient to show that he made a valid offer to Stephens
& Sons. To prove a valid offer, a party must show (1) the offeror intended to make an offer; (2) the
terms of the offer were clear and definite; and (3) the offeror communicated the essential terms of
the offer to the offeree. Engelman Irrigation Dist. v. Shields Bros., Inc., 960 S.W.2d 343, 352 (Tex.
App.—Corpus Christi 1997, pet. denied). If the terms are so vague that the court cannot determine
what the parties intended or what terms to enforce, the contract is unenforceable. See T.O. Stanley
Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992). However, even when the price term
is considered lacking, the trial court may imply a reasonable price when all other elements of a
contract have been met. See Buxani, 940 S.W.2d at 353. Where the parties have done everything
else necessary to make a binding agreement for services, their failure to specify a price does not
leave the contract so incomplete that it cannot be enforced. Burnside Air Conditioning & Heating,
Inc. v. T.S. Young Corp., 113 S.W.3d 889, 895 (Tex. App.—Dallas 2003, no pet.). In such a case,
a presumption arises that a reasonable price was intended. Pennington v. Gurkoff, 899 S.W.2d 767,
770 (Tex. App.—Fort Worth 1995, writ denied).
            Stephens and Brown both testified that the parties initially discussed the "capping" option,
since it would be a quicker and less expensive remedy. When the SRA rejected that idea, Brown
communicated the rejection to Stephens. Stephens and Brown testified that, following this
information, the two agreed that grinding and leveling the defective slab would be the method used. 
Their testimony is also largely consistent in its description of the other work to be done. So, the
evidence clearly supports the finding that the two agreed on the scope of the work to be done. 
Brown concedes there was a oral agreement in his correspondence with Stephens and with KW
Construction's bonding agent. He also reiterates this position throughout his testimony. Considering
only the evidence tending to support the trial court's ruling, we conclude there is legally sufficient
evidence to support the trial court's finding that there was a valid offer made to Stephens & Sons for
the repair and completion of the work on KW Construction's SRA project.
            Turning to the factual sufficiency of the evidence, we note that the only major disagreement
between the parties is the price to be paid to Stephens & Sons for the work to be done. There is
conflicting testimony on both the method of calculation and the amount calculated. Stephens
testified that Brown agreed to pay on a time and materials basis. Stephens & Sons billed KW
Construction for $15,378.63. Shortly after, in a faxed letter to Stephens & Sons, Brown disputed
the calculations and asserted he owed KW Construction $10,237.02. Although it appears Brown
used the same time and materials basis in arriving at the $10,237.02, Brown denies such an
agreement and stated Stephens agreed that the price would be $12,000.00 for the work to be done. 
The record also contains testimony from Brown indicating that the parties agreed that the price to
grind and level the slab was "not to exceed $18,000." Brown explained that this figure is consistent
with the agreement to pay Stephens & Sons $12,000.00, since the parties agreed that KW
Construction would furnish the materials, amounting to approximately $6,000.00. The disagreement
and uncertainty as to the price, however, does not necessitate the conclusion that there was no valid
offer. Having weighed all the evidence, we conclude that the evidence supporting a finding that
there was a valid offer is also factually sufficient.
2.Sufficient Evidence of Acceptance of Offer
            In a related argument, Brown maintains that the evidence was insufficient to support a
finding that Stephens & Sons accepted the offer. An offeree cannot accept an offer to form a
contract unless the terms of the offer are reasonably certain. Fort Worth Indep. Sch. Dist. v. City of
Fort Worth, 22 S.W.3d 831, 846 (Tex. 2000).
            For similar reasons as those discussed above, we conclude Stephens could have and, in fact,
did accept the offer to repair and complete the concrete work on the SRA project. Considering the
evidence tending to support the finding, we see that the two men agreed to essential terms, except
for the price. Weighing all the evidence, we conclude the evidence showing a dispute regarding the
price term does not invalidate the acceptance of the offer. Since the trial court has the power to
imply a reasonable price, the initial discussion and the subsequent clarification that Stephens & Sons
would have to grind and level instead of "capping" the defective slab constituted a valid offer which
gave Stephens the right to accept or reject the offer and which Stephens accepted. The evidence is
legally and factually sufficient to support the finding that Stephens could and did accept the offer
made by KW Construction.
3.Sufficient Evidence of Mutual Assent
            Finally, Brown argues the evidence was insufficient to support a finding of mutual assent. 
Specifically, he contends, the parties never came to an understanding as to what Stephens & Sons
would be paid for the work to be done.
            As we have previously discussed, the missing price term is not fatal to the contract. See
Buxani, 940 S.W.2d at 352. To form a binding contract, the parties must have had a "meeting of the
minds" on the essential terms of the contract. See id. The element of mutual assent may be inferred
from the parties' conduct. Id. In Buxani, the San Antonio Court of Appeals concluded that the
appellants assented to the terms of the oral contract based on their conduct, including the fact that
they allowed work to begin and continue without objection or question until the appellees billed
them for the work. Id.
            The record in this case contains ample evidence that the two men agreed on the essential
terms of the contract. With the exception of a price term, the record demonstrates that the two
parties agreed Stephens & Sons would repair the defective slab and complete the remaining concrete
work. Brown concedes the fact that the two entered into an oral agreement on several occasions. 
For instance, before any litigation, on May 1, 2001, Brown faxed a letter to Stephens & Sons stating,
"I agree that I owe you some monies for the work and material at SRA. . . . . you had verbally agreed
to do at the cost not to exceed $18,000." Brown included a recalculation of $10,237.02 of the time
and materials used. He also acknowledged the contract in a letter to KW Construction's bonding
agent:
[KW Construction] made a verbal agreement with [Stephens & Sons] to furnish labor
to correct some work on this project. The work consisted of removing about 300 sq.
ft. of concrete from the slab. Leveling the rest of the slab (grind and place a top coat)
5568 sq. ft. There was [sic] some porches, side walk, and curb and gutter that was
also to be installed.

In Brown's affidavit in support of his motion to transfer venue, he acknowledged that the parties
formed a contract: "The contract made the basis of Plaintiff's lawsuit was entered into between the
parties . . . in Rains County." At trial, Brown states clearly that he "owed the man some money." 
Brown also testified: "I've done a lot of verbal agreements. This was one of them." Likewise,
Stephens testified that the two agreed on the scope of the work. The parties' testimony is clear and
direct evidence of their intent to be bound.
            Similarly, the parties' conduct supports the finding that they assented to the oral contract. 
Stephens & Sons commenced performance of the repairs and other concrete work and, as noted in
Brown's daily work log, Brown was aware that Stephens & Sons had begun work. Brown sent
correspondence to Stephens & Sons and to KW Construction's own bonding agent in which he
acknowledges the oral contract with Stephens & Sons. He also sent to Stephens & Sons a check for
$4,717.00, indicating that the two had agreed otherwise but had not come to a clear understanding
on the price to be paid. These facts support that the two had mutually assented to the contract,
making the evidence legally sufficient to support such a finding.
            Viewing the entire record, we again note the only major conflict in the evidence: the price
to be paid to Stephens & Sons. KW Construction seizes on this conflict to support its contention that
the evidence is factually insufficient to show mutual assent. Again, the absence of a price term is
not necessarily fatal to the element of mutual assent. The trial court had the authority to supply a
reasonable term since all other elements of contract are shown. Factually sufficient evidence
supports the trial court's finding that Stephens and Brown mutually assented to a contract.
IV.      SUFFICIENCY OF EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING OF
REASONABLE VALUE OF SERVICES

            Brown argues that insufficient evidence supports the trial court's finding that the reasonable
value of the work completed by Stephens & Sons was $12,500.00. Since Stephens and Brown had
done everything else necessary to make a binding agreement for services, the trial court was
permitted to imply a reasonable price term. See Buxani, 940 S.W.2d at 353.
A.        Evidence of Reasonable Value of Work Performed
            The evidence demonstrates a wide range of figures from which the trial court could determine
the reasonable value of the services rendered. KW Construction's witness, Rodney Hoffman of
Hoffman Concrete Construction, who finally completed the concrete work on the SRA project
testified that, based on his thirty-two years of experience, it would have been reasonable to charge
"somewhere around $5,000 to repair [the defective slab]." He also testified to his opinion on
reasonable rates for the other concrete work completed by Stephens & Sons. According to our
calculations using Hoffman's rates, the entire cost of the work done then would have been
approximately $6,622.50.



            Brown testified that $5,000.00 would be a "fair" price to pay to Stephens & Sons for all the
work done. However, in his correspondence to Stephens, he disputed the amount on the invoice and
arrived at a price of $10,237.02. Brown also testified that Stephens agreed to do the work for
$12,000.00. 
            The amount for which Stephens sent an invoice was $15,378.63. Of course, there is also
evidence referring to "a cost not to exceed $18,000." So, the evidence before the trial court ranged
from $5,000.00 to approximately $15,000.00, and possibly up to $18,000.00.


 
B.        Judgment Within Range of Evidence
            The trier of fact has several alternatives available when confronted with conflicting evidence. 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). It may believe one witness and
disbelieve others. Id. It may resolve inconsistencies in the testimony of any witness. Id. It may
accept lay testimony over that of experts. Id.
            The trier of fact is also afforded considerable discretion in evaluating opinion testimony on
the issue of damages. Id. The fact that Hoffman testified as an expert is not controlling. It is well
established in this State that opinion testimony does not establish any material fact as a matter of law. 
Hood v. Tex. Indem. Ins. Co., 146 Tex. 522, 524, 209 S.W.2d 345, 346 (1948). Additionally, the
record contains evidence tending to discredit or undermine Hoffman's testimony. He testified that
he did not observe the defective slab before Stephens & Sons completed its work. Hoffman testified
he based the $5,000.00 figure to repair the slab on the information he was told about the defects in
the slab. This testimony certainly raised questions concerning the credibility and weight to be given
to Hoffman's testimony, and those questions were for the trier of fact to pass upon. See McGalliard,
722 S.W.2d at 697.
            Utilizing these principles, the trier of fact has the discretion to award damages within the
range of evidence presented at trial. City of Houston v. Harris County Outdoor Adver. Ass'n, 879
S.W.2d 322, 334 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The trial court can form its
own opinion from other evidence and by utilizing its own experience and common knowledge. 
McGalliard, 722 S.W.2d at 697; Coffee v. City of Alvin, 641 S.W.2d 597 (Tex. App.—Houston [14th
Dist.] 1982, writ ref'd n.r.e.). We cannot speculate as to the manner in which the trier of fact reached
its award. See Peterson v. Reyna, 908 S.W.2d 472, 476 (Tex. App.—San Antonio 1995), modified
on other grounds, 920 S.W.2d 288 (Tex. 1996). 
            Since the amount of $12,500.00 is within the range of evidence presented to the trial court
and since that amount is not against the great weight and preponderance of the evidence, we
conclude there is legally and factually sufficient evidence to support the trial court's assessment of
reasonable value of services and overrule KW Construction's third point of error.
V.        CONCLUSION
            Having determined that the trial court properly denied KW Construction's motion to transfer
venue and that the evidence was legally and factually sufficient to support the trial court's finding
that the parties entered into an oral contract and the reasonable value of the work performed was
$12,500.00, we overrule KW Construction's point of error. Accordingly, we affirm the trial court's
judgment.



                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          April 13, 2005
Date Decided:             June 8, 2005